464 P.2d 818

**TUCSON FEDERAL SAVINGS & LOAN ASSOCIATION, a corporation, Appellant,**

v.

**Florence SUNDELL, Appellee.**

**No. 2 CA–CIV 705.**

Court of Appeals of Arizona, Division 2.

Feb. 9, 1970.

Review Granted March 24, 1970.

Spaid, Fish, Briney & Duffield, by Richard Duffield, Robertson & Fickett, by Fred Fickett, Tucson, for appellant.

Murphy, Vinson & Hazlett, by Carl E. Hazlett, Tucson, for appellee.

HOWARD, Chief Judge.

This was an action instituted by appellant to foreclose a real property mortgage. Appellee, one of the defendants, filed an answer claiming a superior interest in the real property and a cross-claim against the defendant Lusk Corporation for monies she had paid to it for the property. The issue on the cross-claim was severed pending the adjudication of the issue between the appellant and appellee. The case was submitted to the jury on interrogatories and it determined that appellee's interest was entitled to priority over appellant's to the extent of all amounts paid by her on the purchase price of the property. Judgment was entered in favor of the appellee and appellant filed this appeal.

The facts are undisputed. The appellee Florence Sundell was interested in purchasing a home to be constructed by the Lusk Corporation in one of its subdivisions in Tucson. After some negotiations, she selected the property in question and on June 9, 1965 a purchase contract and agreement between her and Lusk was executed. This agreement was neither acknowledged nor recorded.

The total purchase price was $14,284.00. Paragraph 5 of said agreement contains the following language:

\* \* \* \* \* \*

"Financing of the construction of the house described herein may at the Developer's option be by interim funds loaned to the Developer, the Contractor or the Purchaser by a lending agency. Said funds may be secured by an interim mortgage to be released of record and satisfaction upon completion of construction and recording of final mortgage. The Purchaser hereby assigns said interim funds to the Developer to be disbursed according to the customary schedule of the lending agency. All cost of such interim financing shall be assumed by the Developer."

Lusk had been financing the construction in the subdivision by means of interim loans from the appellant. After execution of the contract with the appellee, Lusk proceeded to undertake the steps necessary to secure this interim financing for construction of appellee's house. It prepared a promissory note in the amount of the interim loan which it desired and a mortgage as security for the indebtedness. The parties to the note and mortgage were the Lusk Corporation as the mortgagor-promisor and appellant as mortgagee-promisee.

On July 6, 1965, and without the knowledge of the appellant, appellee paid Lusk the sum of $5,664.00 on the contract. On July 13th, Lusk ordered a mortgagee's preliminary title report from Arizona Land Title & Trust Company and mailed to the title company the note and mortgage it had prepared. The title company made an examination of the title, determined that record title was in the name of the Lusk Corporation, inspected the premises to insure that no construction had been undertaken thereon and on July 16, 1965 recorded the note and mortgage. Arizona Land

Title thereafter transmitted to appellant the note, mortgage, and preliminary title report.

On July 19th, Lusk requested a loan commitment via telephone and sent appellant the papers it required to secure a commitment for an interim loan. Included in these papers was a copy of the contract and agreement between appellee and Lusk. Mr. Leonard Marshall, an officer of appellant, testified that appellant would not make a commitment for an interim loan until such time as Lusk Corporation actually had a buyer for the property who had signed a contract and agreement to purchase the property. He also testified that the recording of the mortgage prior to the actual commitment was a matter of procedural expediency for Lusk Corporation. However, so far as appellant was concerned, there was no loan existing until appellant had the loan application, an executed construction loan agreement between Lusk and appellant, the preliminary title report, and its loan committee's written approval of the commitment.

The subject loan was approved by the loan committee on August 10, 1965. The construction loan agreement between appellant and Lusk provided for five specified construction stages for payment to Lusk of a proportionate amount of the loan. The first "draw" was made on August 16, 1965. At no time did appellee know that an interim loan had been made by appellant to the Lusk Corporation. The promissory note recited that the principal sum together with interest thereon at the rate of six per cent per annum was due "on or before twelve months from date."

On September 13, 1965 the transaction between Lusk and appellee was consummated by appellee's payment of the balance of the purchase price, $6,740.44 cash and a mortgage to Mission Mortgage, a Lusk affiliate, for $3,250.00. Appellee took possession of the property the same day.

On April 22, 1966 the appellee first learned that appellant held a mortgage on her property. Lusk Corporation, in the meantime, filed bankruptcy proceedings in federal court, and the appellant's loan was never repaid. In October, 1966 appellant filed this action.

The appellee's answer set up as a defense to appellant's claim of priority that the appellant, having knowledge of her equitable interest, was not a bona fide purchaser and therefore its mortgage was inferior to her interest in the property. The case was submitted to the jury on this theory and from its finding that appellant was not entitled to priority, it apparently concluded that appellant was not a bona fide "purchaser."

 The appellee, as vendee under an executory contract for the purchase of real property, became the equitable and beneficial owner of the property. Shreeve v. Greer, 65 Ariz. 35, 173 P.2d 641 (1946); Kresse v. Ryerson, 64 Ariz. 291, 169 P.2d 850 (1946). There is no dispute as to the fact that appellant had actual notice of the appellee's interest. Generally speaking, one who acquires title with notice, actual or constructive, of another's prior right to or equity in the property, is not a bona fide purchaser for value. Davis v. Kleindienst, 64 Ariz. 251, 169 P.2d 78 (1946); State Savings & Loan Association v. Kauaian Development Company, 445 P.2d 109 (Hawaii 1968). Were it not for the inclusion of paragraph 5, set forth above, we would agree with appellee that as against the appellant, she would be entitled to a priority for the amounts she had paid prior to receipt of notice of appellant's recorded mortgage. Wayne Building & Loan Company of Wooster v. Yarborough, 11 Ohio St.2d 195, 228 N.E.2d 841 (1967).

 However, the contract appellee signed clearly authorizes Lusk to obtain interim funds to finance the construction and to give a mortgage as security for the indebtedness. There being no question of her competence as a matter of law, she is held to know the contents of the contract she signed. In re Estate of Henry, 6 Ariz. App. 183, 430 P.2d 937 (1967). Where the intent of the parties, as here, is expressed

in clear and unambiguous language, such language is controlling and there is no need for construction or interpretation, Goodman v. Newzona Investment Co., 101 Ariz. 470, 421 P.2d 318 (1966); Williams v. Safeway Stores, Inc., 198 Kan. 331, 424 P.2d 541 (1967), and its legal effect is solely a judicial function. Kintner v. Wolfe, 102 Ariz. 164, 426 P.2d 798 (1967); Reed & Martin, Inc. v. City and County of Honolulu, 440 P.2d 526 (Hawaii 1968).

The trial judge apparently concluded that paragraph 5 was not free from ambiguity and therefore permitted appellee, over objections, to testify as to the circumstances of her signing the contract. He was of the opinion that, if appellee interpreted the contract to mean that if Lusk arranged for VA or FHA permanent financing there would be no need for interim financing, and there would be a question as to whether appellant should have anticipated such an interpretation on the part of the appellee and therefore should have advised her of the interim financing. We have carefully scrutinized appellee's testimony and find it completely devoid of any facts which would support an inference of a contrary interpretation on her part.

■ She also argues that appellant had no right to rely on the provision as to interim financing since the contract was null and void. In support of this "nullity" claim, she refers to the following portion of paragraph 5:

" * * * If the purchaser is eligible for a VA or FHA loan, Purchaser shall obtain the loan and the Developer does not undertake to obtain it for him, but will assist him. If such financing is not available or if the Purchaser is rejected for a VA or FHA loan then the Developer agrees to refund all monies deposited by the Purchaser and this Contract will become null and void."

* * * * * *

Appellee contends that since appellant knew that she had not procured an FHA loan, it necessarily followed that it knew the contract was void. She overlooks the express language of the contract, however, which requires refund of the monies paid by her to the developer to render the contract null and void. The provision she relies on was inserted for her benefit— to exercise or not at her option. In other words, if she were unable to obtain financing, she could require the return to her of all payments made and both parties would be released from their respective obligations of performance. Having chosen not to exercise her right of rescission, she cannot now say that appellant should not have treated the contract as a valid and subsisting one. It is equally logical that a purchaser, having failed to obtain FHA financing, would still want to have the contract performed and obtain the necessary funds from another source.

The contract between appellee and Lusk imposed no duty either upon Lusk or appellant to inform appellee of the interim financing. There was no special relationship between appellant and appellee by virtue of which such duty arose. Lastly, appellee proved no circumstances indicating her misinterpretation of the contract from which one could reasonably conclude appellant should have given her such notice.

■ We hold, therefore, that although the appellant took the mortgage from Lusk with notice of appellee's interest under the contract, since the mortgage was given with appellee's authorization, her lien under the contract was inferior to that of appellant's mortgage. 92 C.J.S. Vendor & Purchaser § 556, at p. 580. The trial court, in view of the legal effect of the contract, should have directed a verdict in favor of the appellant.

■ The appellee's predicament is one which engenders sympathy, but sympathy affords no basis for relief from a situation created by appellee's misplaced faith in Lusk and in taking no precautions to protect herself. She authorized Lusk to procure a loan and place a mortgage on the property and appellant, relying on her express authorization, advanced funds to Lusk for construction of appellee's house.

Any wrong committed was committed by Lusk, not by appellant. Where one of two innocent parties must suffer because of the actions of a third person, the loss should fall on the one who by his conduct created the circumstances which enabled the third person to perpetrate the wrong or cause the loss. General Motors Acceptance Corportaion v. Hill, 95 Ariz. 347, 390 P.2d 843 (1964); Patterson Motors, Inc. v. Cortez, 2 Ariz.App. 298, 408 P.2d 231 (1965).

Although appellee and appellant are equally innocent, appellee must bear the onus of the loss caused by Lusk. The judgment cannot be sustained solely on the grounds that appellant may be in a better position financially to sustain the loss.

Notwithstanding our reluctance to do so, the judgment is reversed with directions to enter judgment for appellant.

HATHAWAY and KRUCKER, JJ., concur.