UNITED STATES of America, Plaintiff,

v.

ONE (1) 1980 SILVER VOLVO, MODEL 264–VIN VC 26445A1086596, Defendant.

No. 82–0244–Civ–JLK.

United States District Court, S.D. Florida.

March 14, 1984.

Alan Mishael and Jeff Fisher, Asst. U.S. Attys., Miami, Fla., for plaintiff.

James McGuirk, Coral Gables, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES LAWRENCE KING, District Judge.

THIS CAUSE is before the Court following trial in an action seeking civil forfeiture of the defendant vehicle pursuant to 21 U.S.C. § 881 and 49 U.S.C. § 781. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1345 and 1355. Having heard the evidence presented at trial and having considered the parties' statements of applicable law, the Court enters the following findings of fact and conclusions of law pursuant to Fed.R.Civ.Pro. 52(a).

### FINDINGS OF FACT

1. The defendant vehicle, one (1) 1980 Silver Volvo Model 264 VIN VC 26445A1086596 is titled in the name of Mirella Vazquez, the claimant herein.

2. Mirella Vazquez is the wife of Luis Fernando Vazquez.

3. Luis Vazquez claims to be a professional money exchanger.

4. "C.R.V." refers to the offices maintained solely by FBI undercover agents posing as C.R.V. Associates at 7370 Northwest 36th Street, Suite 325–H, Miami, Florida, until May 15, 1981 and thereafter at 7104 Northwest 72nd Avenue, Miami, Florida for the purpose of conducting an undercover investigation into subjects suspected of laundering major narcotics trafficking proceeds in order to hide these proceeds from law enforcement authorities.

5. Moises Musa Assaf was a runner for Luis Vazquez. Assaf was also a runner for the Lignarolas and on occasion proposed his own illegal drug deals.

6. On April 28, 1980 at approximately 6:15 p.m. Assaf, while acting as a runner for Luis Vazquez met with undercover FBI agents at the C.R.V. office, 7370 Northwest 36th Street, Miami, Florida. At that time Assaf delivered $800,000.00 in cash to the agents in exchange for a check for $800,000.00 from the Uniworld Holdings'

account at Southeast First National Bank. Assaf stated that he wanted to meet the agents in one hour at Miamarina to turn over an additional $700,000.00. He also stated that the money he was bringing in was from Luis Vazquez deals.

7. On April 28, 1980 at approximately 7:15 p.m. Assaf met with undercover FBI agents at Miamarina and delivered to them $700,000.00 in cash in exchange for a check for $700,000.00 from the Uniworld Holdings' account at Southeast First National Bank. Assaf did not make any comments on the source of the money he was delivering to the undercover agents. At this time it was observed that Assaf was driving the defendant vehicle.

8. Prior to April 28, 1980 Vazquez and Assaf, sometimes together and sometimes individually, met with undercover agents from C.R.V. to discuss the delivery and handling of large amounts of cash. There was no evidence presented by the United States that Vazquez personally made deliveries of cash.

9. The defendant vehicle was seized on August 4, 1981 by Special Agents of the Federal Bureau of Investigation pursuant to a seizure warrant issued under 21 U.S.C. § 881(a)(4).

10. Prior to the seizure of the defendant vehicle the United States knew that the driver of the defendant vehicle Assaf, was engaged in the business of laundering narcotics proceeds. The United States also knew that on April 28, 1980 Assaf was either in collusion with, or an employee of, Luis Vazquez who the United States knew was also engaged in the business of laundering narcotics proceeds.

11. The United States also knew that Vazquez was involved in transmitting narcotics proceeds from the United States to Colombia.

12. The United States presented credible evidence at trial that Vazquez was responsible for assisting in the laundering of at least $10 million in narcotics proceeds and that Vazquez and Assaf's laundering activities were taking place both before and after April 28, 1980. Prior to April 28, 1980, the undercover agents had extensive dealings with both Vazquez and Assaf in connection with the laundering of narcotics proceeds.

13. The Court finds that Assaf and Vazquez knew that the $700,000 in cash transported in the defendant vehicle by Assaf to C.R.V. on April 28, 1980 were the proceeds of narcotics transactions.

14. There was no evidence presented by the United States that Luis Vazquez personally buys or sells controlled substances.

## CONCLUSIONS OF LAW

1. The Court concludes that the defendant vehicle was used to facilitate the transportation of narcotics proceeds on April 28, 1980.

2. The Court concludes that in the present day and time, it is unreasonable to believe that large-scale narcotics traffickers do not use automobiles to facilitate the movement of enormous sums of narcotics proceeds to money launderers.

3. The Court concludes that the defendant vehicle was an essential ingredient of this comprehensive criminal enterprise.

4. The Fifth Circuit has noted that "whether any particular connection of a vehicle with contraband, where the contraband is not in the vehicle or in the possession of the occupant of the vehicle, constitutes facilitation, is a question of degree, which is in turn a question of fact not readily susceptible to generalization." *United States v. One 1971 Chevrolet Corvette*, 496 F.2d 210, 212 (5th Cir.1974). Under the particular circumstances present in this case, the Court finds that Assaf's knowing use of a vehicle to transport narcotics proceeds in the form of enormous amounts of cash to a money-laundering operation dealing exclusively with narcotics proceeds constitutes facilitation and that as a matter of law, the underlying facts fall within the purview of the 21 U.S.C. § 881(a)(4) and 49 U.S.C. § 781.

5. In reaching the conclusion that the defendant vehicle was used to facilitate the

**1168**

sale or transportation of controlled substances, the Court has reviewed *United States v. One 1978 Mercedes Benz, Four Door Sedan,* 711 F.2d 1297 (5th Cir.1983) and *United States v. One 1972 Chevrolet Corvette,* 625 F.2d 1026 (1st Cir.1980).

6. The Court holds that the United States has established probable cause to support the seizure and forfeiture of the defendant vehicle. Prior to the seizure, the United States had reasonable grounds to believe that the defendant automobile was used to facilitate the sale or transportation of controlled substances. It is therefore the conclusion of the Court that the defendant vehicle should be and is deemed forfeit.

A final judgment of forfeiture shall be entered accordingly.