905 P.2d 1372

**In the Matter of 1986 CHEVROLET COR-VETTE, License: None, VIN: 1G1Y678XG5905647, Seized In M.A.N.T.I.S. Case 9105079501.**

No. CV–92–0182–PR.

Supreme Court of Arizona.

July 19, 1994.

Stephen D. Neely, Pima County Attorney by Christopher J. Roads, Tucson, for Appellant State of Arizona.

Harley Kurlander, Tucson,. for Appellee Evan Morris.

Grant Woods, Attorney General by Cameron H. Holmes, Phoenix, Amicus Curiae.

## OPINION

ZLAKET, Justice.

The issue in this case is whether a 1986 Chevrolet Corvette, purchased by petitioner from a Scottsdale dealer on January 19, 1991, is subject to civil forfeiture. The state does not claim that he paid for the car with illegally acquired funds. It argues instead that he subsequently used the vehicle to pay off a drug-related debt, thereby "facilitating" a conspiracy to transport marijuana for sale.

Approximately six weeks before he bought the car, petitioner was arrested in Las Cruces, New Mexico while driving a van loaded with 400 pounds of marijuana. An individual we shall call "Robert" was the apparent source of the contraband, and he allegedly blamed petitioner for its loss. Robert also accused him of having burglarized his home and taken approximately $12,000 worth of property. Finally, he was angry with petitioner for being involved with his former girlfriend.

Robert demanded payment of $18,000. Although the record is not clear on how he arrived at this figure, the state argues it was

partial payment for the lost load of marijuana.[1] Robert intimated to both petitioner and his girlfriend that nonpayment might result in physical harm to petitioner. He also threatened to tell authorities that he suspected petitioner of having committed the burglary while on bail from the New Mexico charges. On April 12, 1991, allegedly under the pressure of these threats, petitioner gave the Corvette to Robert. They signed a "bill of sale" as well as a document reciting that payment of $18,000 on or before June 12 would result in the vehicle's return.

Petitioner contacted the Pima County Sheriff's Office on April 17 to seek help in recovering the car. He told his story to a deputy and later repeated it for a detective assigned to the Metropolitan Area Narcotics Trafficking Interdiction Squad (MANTIS). Officers seized the Corvette on May 7, but instead of returning it, the state instituted forfeiture proceedings. Its civil *in rem* complaint alleged that the vehicle was subject to forfeiture as property "used or intended to be used to facilitate" a drug transaction. *See* A.R.S. §§ 13–2314(F)(3), 13–3413(A)(3).

The trial court held a hearing, and ordered the car returned to petitioner after it determined that the property was not subject to forfeiture because the state had "not met its burden of showing the existence of probable cause...." The court of appeals reversed, concluding that "the state showed reasonable grounds for its belief that the connection between the vehicle and the criminal offense was more than incidental or fortuitous, because the vehicle was used in some manner or part to satisfy a drug debt that was the direct result of the criminal activity." *In re 1986 Chevrolet Corvette,* 171 Ariz. 495, 501, 831 P.2d 871, 877 (Ct.App.1992). We now vacate that opinion and affirm the trial court's judgment. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

### Is Petitioner's Interest Sufficient?

■ At the outset, we address an issue presented to but not reached by the court of appeals. The trial court found that petitioner had an equitable interest in the automobile, giving him standing to file a claim. The state challenged this finding, arguing that he did not have a sufficient property interest because he failed to register the Corvette with the Motor Vehicle Division (MVD).

When petitioner bought the car on January 19, he received a temporary registration. He testified that he could not permanently register the vehicle until it was inspected and emissions tested, which the dealer had not done. Furthermore, because of problems with a lien release, he did not receive the existing certificate of title from Minnesota until after the temporary registration had expired, and only a week and a half before he turned the car over to Robert. Thus, although petitioner had possession of the vehicle for several months, he had not obtained a completed registration in his name.

A.R.S. § 28–314 requires the purchaser of an automobile to present the certificate of title to the MVD within 15 days, so that a new certificate can be issued in his or her name. The state argues that it stands as a bona fide purchaser for value against petitioner because he did not comply with the foregoing statute. It relies on the following language of A.R.S. § 13–4301(3):

> A purported interest which is not in compliance with any statute requiring its recordation or reflection in public records in order to perfect the interest against a bona fide purchaser for value shall not be recognized as an interest against this state in an action pursuant to this chapter.

The state thus concludes that petitioner's interest is invalid against it in these forfeiture proceedings. The trial court did not agree. Neither do we.

The foregoing statute purports to cloak the state with protections normally extended to a bona fide purchaser for value. It is silent, however, as to what effect the state's actual knowledge of a competing claim might have. This silence creates ambiguity, since it has long been true that one who knows of another's interest cannot be accorded the status of a bona fide purchaser for value. *Tucson Fed. Sav. & Loan Ass'n v. Sundell,* 11 Ariz.

---

1. The marijuana, according to the state's witness, was worth well in excess of $18,000.

App. 372, 374, 464 P.2d 818, 820 (1970), *vacated on other grounds,* 106 Ariz. 137, 472 P.2d 6 (1970); *Davis v. Kleindienst,* 64 Ariz. 251, 258, 169 P.2d 78, 82 (1946). In fact, the mark of a bona fide purchaser in both statutory and common law is that he or she be without knowledge of any competing claim. *See Warren v. Whitehall Income Fund 86,* 170 Ariz. 241, 243, 823 P.2d 689, 691 (Ct.App. 1991); A.R.S. § 47–8302 (Uniform Commercial Code); Black's Law Dictionary 223–24 (4th ed. 1951). It is this innocence or absence of knowledge, rather than any failure on the part of a lienholder to technically comply with public notice statutes, that impels the law to grant protection to unwitting purchasers.

Where the meaning of a statute is ambiguous, a court may resort to rules of reasonable interpretation. *State v. Sweet,* 143 Ariz. 266, 269, 693 P.2d 921, 924 (1985). A.R.S. § 13–4301(3) clearly appears to have been intended to protect the state from claims of *hidden* interest holders. It permits forfeiture free and clear of lienholders who have failed to comply with recordation statutes, and whose interests are thus unknown to the state when it seizes property. *Cf.* Ana K. Ramares, Annotation, *Effect of Forfeiture Proceedings Under Uniform Controlled Substances Act or Similar Statute on Lien Against Property Subject to Forfeiture,* 1 A.L.R. 5th 317 (1992).

We are therefore of the opinion that to defeat an interest under the foregoing provision of § 13–4301(3), the state must be without actual knowledge of the competing claim. To hold otherwise would mean that the forfeiture of any vehicle not timely registered in Arizona would be unchallengeable, regardless of other pertinent circumstances such as origin, possession, payment or actual notice. Apart from the due process implications of such a draconian result, we see nothing to suggest that the legislature ever contemplat-

ed it.[2] Here, there was nothing secret about petitioner's claimed interest. Indeed, the state would never have known about the car had he not sought police assistance in recovering it.

Moreover, the state concedes that registered title only constitutes prima facie evidence of ownership, a rebuttable presumption at best. *Wallace Imports, Inc. v. Howe,* 138 Ariz. 217, 224–25, 673 P.2d 961, 968–69 (Ct.App.1983). *See also Price v. Universal C.I.T. Credit Corp.,* 102 Ariz. 227, 232, 427 P.2d 919, 924 (1967) (it is not necessary that a certificate of title be transferred and assigned to effect a valid sale). Other indicia are frequently examined to determine legal or equitable ownership.[3] *Meridian Mtg. Co., Inc. v. State,* 182 Ind.App. 328, 339–40, 395 N.E.2d 433, 439–40 (1979). *See also* Annot. 18 A.L.R.2d 813; Black's Law Dictionary 1259–60 (4th ed. 1951). Petitioner possessed and was able to produce all appropriate paperwork, including sales documents furnished by the dealer, copies of the writings entered into with Robert, and the Minnesota title certificate. Thus, the trial court found that even though petitioner had not been issued an Arizona certificate of title, he had an equitable interest in the car which qualified him to challenge its forfeiture. *See* A.R.S. § 13–4301(3). On these facts, that finding was not clearly erroneous.

*Is The Property Subject To Forfeiture?*

█ Under A.R.S. § 13–4304, property is subject to forfeiture if some other statute provides for such a remedy. Here, the state invoked the substantive standard found in the "facilitation" provisions of A.R.S. §§ 13–2314 and 13–3413. Section 13–2314(F)(3) subjects to forfeiture "[a]ll proceeds traceable to an offense ... and all monies, negotiable instruments, securities, property, and other things of value used or intended to be used in any manner or part to facilitate the

2. We note that A.R.S. § 28–314 does not expressly provide that compliance is required to protect one's ownership interest against subsequent claimants. Compare A.R.S. § 28–325, which specifically states that security interests in vehicles are not valid against subsequent purchasers "until the requirements of this section have been complied with."

3. In fact, the state has argued in another matter that registered title alone is not sufficient proof of an ownership interest to contest forfeiture. *See In re One 1983 Toyota Silver Four Door Sedan,* 168 Ariz. 399, 402, 814 P.2d 356, 359 (Ct.App.1991).

commission" of a racketeering offense. Section 13–3413(A)(3) similarly subjects to forfeiture vehicles used or intended to be used "to transport or in any manner facilitate the transportation, sale or receipt of, or in which is contained or possessed, any item or drug...."

At a forfeiture hearing, the state has the initial burden of demonstrating "probable cause for forfeiture," A.R.S. § 13–4311(K), that is, cause to believe the substantive standard has been satisfied. To meet this burden, the state must demonstrate reasonable grounds for its belief that the property is subject to forfeiture, supported by more than a mere suspicion, but less than prima facie proof. *See United States v. $149,442.43*, 965 F.2d 868, 876 (10th Cir.1992). Once the state establishes probable cause, the claimant has the burden of showing by a preponderance of the evidence that the property is not subject to forfeiture, § 13–4311(K), either because it is exempt, or because the substantive standard has not been met. *See* A.R.S. § 13–3404.

The state did not seek forfeiture on grounds that the Corvette constituted "proceeds traceable to" a crime. *See, e.g.*, A.R.S. § 13–2314(F)(3). Thus, we need not determine whether property given in payment (or as collateral for payment) of a debt for lost or confiscated drugs is forfeitable under a "proceeds" statute. The only argument made by the state in the trial court was as follows: Petitioner and others conspired to transport 400 pounds of marijuana. This conspiracy was intercepted by law enforcement officers. By losing the marijuana, petitioner incurred a debt to Robert, which he paid in part by turning over the Corvette. This transfer "facilitated" the crime by compensating Robert for the lost drugs.

The argument presumes a great deal. The record contains no information about the drug "debt" that these conspirators supposedly agreed to and partially satisfied with the automobile.[4] All we know from petitioner's

statements to the officers is that Robert was angry with him for a number of reasons, only one of which was the confiscation of the marijuana, and that he demanded a payment. When interviewed by the police, Robert indicated that the car had been transferred to him solely as restitution for the alleged burglary. As might be expected, he denied any suggestion that he was a "drug dealer," or that he had anything to do with the load of marijuana in question. Thus, the state's version of the facts, although characterized by the court of appeals as having been based on "uncontroverted" and "undisputed" evidence, 171 Ariz. at 500, 831 P.2d at 876, contains considerable supposition and speculation. Even if we treat the state's scenario as being grounded in reasonable and permissible inference, however, it still falls considerably short of showing "facilitation."

Under the most liberal construction of the phrase, property is "used to facilitate" a crime if its use makes the commission of the crime less difficult. *United States v. One 1977 Lincoln Mark V Coupe*, 643 F.2d 154, 157 (3rd Cir.1981), *cert. denied*, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981); *see also United States v. Two Tracts of Real Property*, 998 F.2d 204 (4th Cir.1993). While "proceeds" statutes deprive the criminal of the *fruits* of his or her crime, "facilitation" statutes allow forfeiture of the *tools* of the crime. For example, federal facilitation cases have approved the forfeiture of an airplane used to transport conspirators and contraband, *see, e.g.*, *United States v. 1966 Beechcraft Aircraft Model King Air*, 777 F.2d 947 (4th Cir.1985); a vehicle used to transport chemicals employed in making illicit drugs, *United States v. 1964 Beechcraft Baron Aircraft, Etc.*, 691 F.2d 725 (5th Cir.1982), *cert. denied*, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983); a vehicle used as cover for a drug deal, *1977 Lincoln Mark V Coupe, supra* (suspects conducted drug transaction while bending under the open hood of the car); real property from which drug deals were conducted by phone, *United States v.*

---

**4.** Details unaccounted for include, for example, the amount of the "debt"; the terms of payment; whether any such terms were agreed upon in advance; and the respective roles and obligations of the parties to the transaction. While

we recognize that such facts can often only be shown circumstantially in this type of case, there should be at least some evidence from which they can reasonably be inferred.

*Real Estate Known as 916 Douglas Ave.,* 903 F.2d 490 (7th Cir.1990); and even real property that a suspect intended to mortgage for money to buy drugs, *United States v. RD 1, Box 1, Thompsontown,* 952 F.2d 53 (3rd Cir. 1991).

In this case, however, petitioner's Corvette was not used to physically transport the marijuana at issue, nor did it make commission of the crime any easier. He did not even purchase the car until over a month after his arrest. Although the state now argues that the subsequent transfer of the Corvette was part of a drug conspiracy that lasted beyond December 1990, there is no evidence of any planned future crime or ongoing criminal operation, nor was such an argument made in the court below. In support of this theory, the state cites cases holding that a conspiracy does not end until the conspirators have settled up and made payment. *See United States v. A–A–A Electric Co., Inc.,* 607 F.Supp. 266 (D.C.N.C.1985) (for purposes of the statute of limitations, bid-rigging conspiracy deemed to have continued through the time payoffs were made to co-conspirators); *United States v. Walker,* 653 F.2d 1343 (9th Cir.1981), *cert. denied,* 455 U.S. 908, 102 S.Ct. 1253, 71 L.Ed.2d 446 (1982) (same). In those cases, however, the division of profits was found to be an integral part of the crimes, and was clearly contemplated by the conspirators in their initial agreements. In fact, the court in *Walker* observed that ongoing payoffs allowed the conspiracy to continue, and without them "the scheme would have fallen apart." 653 F.2d at 1347.

Here, the marijuana offense was completed, albeit unsuccessfully from the perspective of the conspirators. The crime, and any conspiracy to commit it, was over. *See State v. Yslas,* 139 Ariz. 60, 676 P.2d 1118 (1984). There was also no evidence that the transfer of the car was intended to cover up the crime or allow the conspirators to escape prosecution. *Compare United States v. One 1980 Silver Volvo,* 582 F.Supp. 1166 (S.D.Fla.1984) (vehicle used to transport drug proceeds for money laundering held subject to forfeiture). The Corvette was simply not a tool—either as a vehicle or as a money substitute—used in the *commission* of any offense. The

state's reasoning, if valid, would mean that this conspiracy could be deemed to last for decades, or as long as the "debt" remained unpaid, despite the absence of any ongoing criminal activity. Neither the law, nor common sense, supports such a conclusion.

The parties persuaded both the trial court and the court of appeals to consider whether Arizona should follow the "substantial connection" test adopted by some federal courts in facilitation cases. *See, e.g., United States v. Schifferli,* 895 F.2d 987 (4th Cir.1990); *United States v. One 1976 Ford F–150 Pick-Up,* 769 F.2d 525 (8th Cir.1985). Our appellate court ultimately rejected that test, 171 Ariz. at 498–500, 831 P.2d at 874–76, and instead followed the reasoning of the seventh circuit in *United States v. One Parcel of Real Estate,* 903 F.2d 490 (7th Cir.1990) ("nexus" sufficient to warrant forfeiture of home from which defendant negotiated drug transactions).

Each case we have seen discussing the "substantial connection" requirement is clearly distinguishable from the present situation. Indeed, neither party has cited any case that even comes close on its facts to this matter, and we can find none. In virtually every instance, the cases deal with property that somehow assisted in the commission of a crime, even if only in a remote way. Thus, we see no need here to express a preference for or against the "substantial connection" test. Even *One Parcel of Real Estate* requires that "the nexus" be "more than incidental or fortuitous." 903 F.2d at 494. And although, as the court of appeals points out, the trial court erroneously cited that case for the proposition that a "substantial connection" must be shown, 171 Ariz. at 499, 831 P.2d at 875, we believe the result here was nevertheless correct. If there was any connection at all between this car and the commission of a crime, the trial court correctly concluded it was incidental or fortuitous at best. The state's attempts to establish something more are unpersuasive.

As the fourth circuit court of appeals recently stated:

One of the most potent weapons in the government's war on drugs is its ability to obtain the civil forfeiture of property that

aids violations of the drug laws.... Congress has given this weapon increased power, expanding the war to every piece of real property involved in the narcotics trade. Yet even warfare is conducted by rules. It is the judiciary's responsibility to ensure that the civil forfeiture penalty fells only those property interests which spring rightly and justly into its reach. While we do not doubt that the anomalous circumstances of this case render it something of a *rara avis*, even the rarest of species deserve shelter under the law's aegis.... To permit the government to arrest the quasi-servient tenement here simply because a guilty person acquired an interest in it *after* the commission of his crime would, we submit, work injustice. Confronted with such a case, we recoil.

*Two Tracts*, 998 F.2d at 213–14 (4th Cir. 1993) (emphasis added) (quasi-servient tenement acquired by co-conspirator after drugs were transported across it from a marina to a road held not subject to forfeiture). The car in this case "facilitated" nothing other than perhaps the avoidance of physical or other harm to petitioner, if his tale of Robert's threats is to be believed. We therefore uphold the trial court's finding that the state failed to demonstrate probable cause for forfeiture. We affirm the judgment of the trial court and vacate the opinion of the court of appeals.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.