NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

CLAY STEVENS, *Appellant.*

No. 1 CA-CR 12-0759
FILED 07-31-2014

---

Appeal from the Superior Court in Maricopa County
No. CR2011-006283-001
The Honorable Cynthia Bailey, Judge

**VACATED IN PART, AFFIRMED IN PART**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Craig W. Soland
*Counsel for Appellee*

Maricopa County Office of the Legal Advocate, Phoenix
By Frances J. Gray
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Kenton D. Jones delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Lawrence F. Winthrop joined.

**J O N E S, Judge**:

**¶1**        Clay Stevens (Stevens) was convicted of thirty criminal offenses, including participation in a criminal syndicate, trafficking in stolen property, conspiracy to commit fraud, sale of dangerous drugs, possession of drug paraphernalia, possession of marijuana, possession of narcotics, possession of dangerous drugs, and eighteen counts of use of a wire or communication in drug-related transactions.  He appeals only his convictions and sentences for possession of drug paraphernalia (Count 6), use of a wire or electronic communication in drug related transactions (Counts 12-16, 20), and sale or transportation of dangerous drugs (Count 29) on the grounds of insufficiency of the evidence and an improper jury instruction.  For the reasons that follow, we affirm his convictions and sentences except for Count 12 and Counts 14 through 16, for which we conclude the evidence was insufficient to convict Stevens.

### FACTS AND PROCEDURAL HISTORY

**¶2**        "We view the facts in the light most favorable to upholding [Stevens'] convictions."  *State v. Yonkman*, 233 Ariz. 369, 371, ¶ 2, 312 P.3d 1135, 1137 (App. 2013).   As Stevens' appeal concerns only certain convictions for drug-related offenses, we limit our recitation of the facts to those pertinent to the issues he has raised on appeal.

**¶3**        In early 2011, the Phoenix Police Department began a bank fraud investigation into a group for which it had coined the name "Bever Dam."   The investigation revealed the Bever Dam group was also involved in drug activities and trafficking in stolen property.  Stevens was the apparent leader of the Bever Dam outfit.

**¶4**        In February 2011, the Phoenix Police Department arranged to purchase a stolen laptop from Stevens.  Once the transaction was completed, the police arrested Stevens; at this time, the police also seized Stevens' cell phone.  The police then executed a search warrant on

Stevens' home, during which marijuana, prescription pills, and various items of drug paraphernalia were found.

¶5        Stevens posted a bond and was released from custody.  In June 2011, as part of his bail conditions, a bondsman visited Stevens' home to conduct a random drug test.  The bondsman accompanied Stevens to the bathroom, where he ultimately noticed a bag containing a white, crystalline substance on the bathroom counter; later testing confirmed the substance to be methamphetamine.  The bondsman placed Stevens in handcuffs and called the police.  Upon arrival, the police performed a protective sweep of the home, during which multiple baggies of methamphetamine, containers of needles, and several spoons containing white residue consistent with methamphetamine and black residue consistent with heroin were found.

¶6        Stevens was indicted on thirty-one criminal offenses. Thereafter, a nine-day trial commenced on July 17, 2012.  Stevens was convicted on thirty of the thirty-one criminal offenses for which he was indicted.  *Supra* ¶ 1.  The court imposed concurrent sentences totaling 9.25 years' incarceration.  Stevens timely appealed.  We have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(2), 13-4031, and 13-4033(A)(1).[1]

## DISCUSSION

¶7        Stevens raises two issues on appeal: (1) whether insufficient evidence supported his convictions for possession of drug paraphernalia (Count 6), use of a wire to facilitate possession of drugs or drug paraphernalia (Counts 12-16, 20), and the sale of dangerous drugs (Count 29); and (2) whether the trial court erroneously instructed the jury on Count 29.

## I.    Sufficiency of Evidence

¶8        We review *de novo* the sufficiency of the evidence to support a conviction.  *State v. West*, 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011*)*.  In doing so, we view the facts and draw all reasonable inferences in the light most favorable to sustaining the jury's verdict.  *State v. French*, 104 Ariz. 359, 362, 453 P.2d 505, 508 (1969).  We will not disturb a defendant's conviction unless no substantial evidence supports it.  *State v.*

[1] Absent material revision from the date of the offense we cite to the current version of the statutes.

*Fimbres*, 222 Ariz. 293, 297, ¶ 4, 213 P.3d 1020, 1024 (App. 2009). "Substantial evidence is 'evidence that reasonable persons could accept as sufficient to support a guilty verdict beyond a reasonable doubt.'" *Id.* (quoting *State v. Stroud*, 209 Ariz. 410, 411-12, ¶ 6, 103 P.3d 912, 913-14 (2005)). We do not distinguish between direct and circumstantial evidence. *State v. Stuard,* 176 Ariz. 589, 603, 863 P.2d 881, 895 (1993).

### A.     Possession of Drug Paraphernalia (Count 6)

¶9          Count 6 of the indictment alleged Stevens, on June 2, 2011, unlawfully used, or possessed with intent to use, drug paraphernalia (a spoon), to ingest methamphetamine. *See* A.R.S. § 13–3415(A). Stevens argues the evidence presented was insufficient to convict him for several reasons: (1) other methamphetamine addicts were present in the house at the time it was searched; (2) the failure to specify (a) which of several spoons admitted into evidence supported this offense, (b) the spoon's location in relation to Stevens or drugs, and (c) how recently the residue was deposited upon the spoon; and (3) the lack of scientific testing to confirm the nature of the residue found upon the spoon. We conclude that the evidence was sufficient to support Stevens' conviction.

¶10         The spoon that was the subject of this count was one of several spoons contained in Exhibit 81 that were seized along with three baggies of methamphetamine in the search of Stevens' home on June 2, 2011. An experienced and qualified detective testified that some of the spoons collected in Exhibit 81 contained white residue indicative of their use for preparation of methamphetamine for ingestion, and others contained black residue indicative of their use for heroin ingestion. To convict Stevens on this count, the State was not required to introduce evidence that a scientific test confirmed the nature of the residue; the detective's expert opinion was sufficient. A.R.S. § 13-3415(E)(14) ("In determining whether an object is drug paraphernalia, a court or other authority shall consider, in addition to all other logically relevant factors . . . [e]xpert testimony concerning [the object's] use."); *see State v. Doty*, 232 Ariz. 502, 505, ¶ 11, 307 P.3d 69, 72 (App. 2013) (holding that § 13-3415(E)'s reference to "a court or other authority" refers to the fact-finder — in that case, the jury).

¶11         The evidence was also sufficient to show Stevens used, or possessed with intent to use, one of the spoons to ingest methamphetamine. Stevens testified he was a methamphetamine addict and he admitted to a detective during the search that all of the drugs and drug paraphernalia found inside the house belonged to him. While Stevens later testified that he lied to police about the drugs to protect his

wife from prosecution, he did not similarly retract his admission that the drug paraphernalia found inside the house was his. Nor did Stevens mount a separate defense to any of the several spoons seized from his house. A jury could reasonably have concluded the evidence proved beyond a reasonable doubt that Stevens used, or possessed with the intent to use, one of the spoons found inside his house to ingest methamphetamine.

### B. Use of Wire to Facilitate Possession (Counts 12-16)

**¶12** Counts 12-16 alleged that by sending a series of text messages to a person named Jay Bird, Stevens used a wire or electronic communication to facilitate the crimes of possession of dangerous drugs, narcotic drugs, and drug paraphernalia. Specifically, the indictment charged Stevens, as a result of "a series of text messages to a person named Jay Bird," with unlawful use of a wire, "to facilitate the crime of possession of dangerous drugs and possession of narcotic drugs" (Count 12), "to facilitate the crime of possession of narcotic drugs" (Counts 13-15), and "to facilitate the crime of possession of drug paraphernalia" (Count 16), in violation of A.R.S. § 13–3417(A).

**¶13** The text messages forming the basis of these offenses were retrieved from the cell phone seized from Stevens at the time of his arrest in February 2011 for trafficking in stolen property. They read:

> Count 12: "Hey I'm gonna need at least a quarter oz of black and a ball of g" (3:44 p.m.) (1/31/11);
>
> Count 13: "Hey got a guy wanting 2oz of black" (9:18 a.m.); "Call me when u can" (3:37 p.m.); and "Here" (7:19 p.m.) (2/1/11);
>
> Count 14: "Can we go get some black asap" (2:08 p.m.) and "Here" (10:35 p.m.) (2/2/11);
>
> Count 15: "Pulling in now" (12:56 a.m.); "Hey I'm ready. Quarter oz. of each"(7:31 p.m.); and "p" (7:35 p.m.) (2/4/11);
>
> Count 16: "Yo you got an extra scale I can use tonight? Mine took a shit on me" (11:00 p.m.) (2/9/11); and, following Jay Bird's messages ("Call me ASAP" and "R u OK"), "Ya" and "I'll call u in a min" (12:10 a.m.) (2/10/11).

A detective testified that "black" referred to heroin, and "g" referred to methamphetamine. Another member of the Bever Dam group testified

that Jay Bird had acted as a "middle man" for Stevens, providing him with methamphetamine and heroin.

¶14        Stevens argues these text messages showed, at most, that he was guilty of solicitation of drugs and a scale from Jay Bird,[2] an offense for which he was not charged, but failed to show he facilitated anyone other than himself to possess the drugs or the scale.

### 1.        Counts 12 & 14 Through 16

¶15        As to Counts 12, 14, 15, and 16, we agree that the evidence presented was insufficient to support Stevens' convictions. The crime of use of a wire or electronic communication to facilitate a drug-related transaction is defined in A.R.S. § 13–3417(A), which provides in pertinent part: "It is unlawful for a person to use any wire communication or electronic communication . . . to facilitate the violation of any felony provision . . . of this chapter [A.R.S. §§ 13–3401 *et seq.*]."  The possession of dangerous drugs, the possession of narcotic drugs, and the possession of drug paraphernalia are included among those crimes provided within chapter 34 (Drug Offenses).  A.R.S. §§ 13-3407(A)(1), 13-3408(A)(1), 13-3415(A).

¶16        In this case, the jury instructions defined the term "facilitate," as present within § 13-3417(A), to mean the separate criminal offense of facilitation, as defined by A.R.S. § 13-1004(A).  Specifically, the jury was instructed:

> The crime of facilitation to commit Possession of Narcotic Drugs, Dangerous Drugs, or Drug Paraphernalia as charged in the use of wire communication requires proof that the defendant, acting with knowledge that another person was committing or intended to commit the possession of whatever item is charged in that count, knowingly provided such other person with the means or opportunity for the commission of that offense.

---

[2] *See* A.R.S. § 13-1002(A) (A person commits solicitation "if, with the intent to promote or facilitate the commission of a felony . . . [he] commands, encourages, requests or solicits another person to engage in specific conduct which would constitute the felony . . . or would establish the other's complicity in its commission.").

*See* A.R.S. § 13-1004(A). This instruction followed the Revised Arizona Jury Instructions (RAJI) Statutory Criminal 34.17 (Use of Wire Communication or Electronic Communication in [Drug Related] [Organized Crime Related] Transaction), which links the definition of "facilitate" with the offense of facilitation provided in § 13-1004(A).[3] The jury was further instructed that it was required to "decide this case by applying these jury instructions to the facts as you determine them," and that it "must follow these jury instructions." We presume on review that the jury followed these instructions. *State v. Prince*, 204 Ariz. 156, 158, ¶ 9, 61 P.3d 450, 452 (2003).

---

[3] We note the RAJI's are not authoritative law or approved by the Arizona Supreme Court, *see State v. Logan*, 200 Ariz. 564, 566, ¶ 12, 30 P.3d 631, 633 (2001), and that nothing within the plain language of § 13-3417 incorporates the definition of facilitation provided in § 13-1004. When interpreting a statute, we first look to its language, as it is the best and most reliable indicator of its meaning. *State v. Mahaney*, 193 Ariz. 566, 568, ¶ 12, 975 P.2d 156, 158 (App. 1999). In so doing, we supply words with their ordinary meaning "[u]nless the legislature clearly expresses an intent to give a term a special meaning." *Id.*; *see* A.R.S. § 1-213. The plain meaning of the word "facilitate" is "to make easy or easier." *Webster's Encyclopedic Dictionary* 338 (Deluxe Ed. 1990); *cf. In re 1986 Chevrolet Corvette*, 183 Ariz. 637, 640, 905 P.2d 1372, 1375 (1994) (noting that under its most liberal construction, facilitate means to make the commission of a crime less difficult). The RAJI Stat. Crim. 34.17 seems to conflate the criminal conduct of using a cell phone to make one's own drug crime easier to complete with the act of facilitating (knowingly providing the means or opportunity) another person's commission of a drug crime through the use of a cell phone. However, neither party objected to the jury instruction or raised it as an issue on appeal. Moreover, any error arguably inured to Stevens' benefit as it required the State to prove Stevens used the cell phone to provide the means or opportunity for another person to possess drugs or drug paraphernalia rather than more simply prove Stevens used the cell phone to make easier his own possession of drugs and drug paraphernalia. Therefore, we do not address the instruction further. *See State v. Sierra-Cervantes*, 201 Ariz. 459, 464, ¶ 29, 37 P.3d 432, 437 (App. 2001) (concluding that reversal is unwarranted when an erroneous jury instruction benefits the defendant); *cf. State v. Lindner*, 227 Ariz. 69, 70 n.1, ¶ 3, 252 P.3d 1033, 1034 n.1 (App. 2010) (appellate court will not address arguments that are not developed in a defendant's opening brief).

¶17        Accordingly, the State was required to prove that Stevens used a wire to knowingly provide the means or opportunity for another person to possess dangerous drugs and narcotic drugs (Count 12), narcotic drugs (Counts 14-15), and drug paraphernalia (Count 16). We conclude the State failed to prove these text messages provided the means or opportunity for anyone to do anything.

¶18        The State argues Stevens' offer to buy drugs from Jay Bird provided the means or opportunity for Jay Bird to obtain, and therefore possess, the drugs and drug scale, or alternatively, the means or opportunity for Stevens' existing customers to possess the drugs. This argument relies, not upon evidence, but upon speculation. The text messages corresponding to these counts demonstrated only that Stevens offered to buy drugs and sought to borrow a drug scale from Jay Bird. *See Abuelhawa v. United States*, 556 U.S. 816, 820 (2009) (analyzing 21 U.S.C. § 843(b), an analogous statute to A.R.S. § 13-3417, and noting that "[w]here a transaction like a sale necessarily presupposes two parties with specific roles, it would be odd to speak of one party as facilitating the conduct of the other").

¶19        Although the text messages arguably provided Jay Bird with a motive to obtain drugs (the profit from selling the drugs to Stevens), these specific text messages did not provide him with the means or opportunity to procure the drugs. While the evidence at trial demonstrated generally that Jay Bird supplied Stevens with drugs and Stevens sold drugs or traded drugs for services, the State failed to offer any evidence that Stevens' text messages, as presented to the jury, provided the means or opportunity for Jay Bird to obtain the drugs or drug scale referenced therein, or, for that matter, that these text messages provided the means or opportunity for Stevens' customers to possess the referenced drugs.

¶20        The evidence, in short, failed to show that Stevens' offer to buy drugs or borrow a scale from Jay Bird provided Jay Bird or any other person the means or opportunity to possess dangerous drugs, narcotic drugs, or drug paraphernalia. *See In re Christopher R.*, 191 Ariz. 461, 463, 957 P.2d 1004, 1006 (App. 1997*)* (holding the State's argument that a juvenile facilitated the offense of criminal damage was flawed because it relied upon speculation regarding facts on which the State had the burden of proof). Therefore, we conclude the evidence was insufficient to support Stevens' convictions for Count 12 and Counts 14 through 16.

### 2. Count 13

¶21 Unlike Count 12 and Counts 14 through 16, we find sufficient evidence was presented at trial to support Stevens' conviction on Count 13. As referenced above, see *supra* ¶ 13, this count was supported by several text messages Stevens sent to Jay Bird: "Hey got a guy wanting 2oz of black" (9:18 a.m.); "Call me when u can" (3:37 p.m.); and "Here" (7:19 p.m.) (2/1/11). Distinguishing this count from Counts 12 and 14-16 is that Stevens was not attempting to secure the drugs for himself, but in fact communicated to Jay Bird that he was seeking drugs *specifically for another person*. These text messages demonstrate Stevens knew a person who wished to possess drugs, which prompted Stevens to inform Jay Bird, a drug supplier, of that person's desire. By notifying Jay Bird, a person with the ability to provide drugs, that a person wished to procure drugs, Stevens knowingly provided that person with the means or opportunity to possess those drugs. *See* A.R.S. § 13-1004(A). Therefore, pursuant to the jury instructions provided in this case, sufficient evidence existed for the jury to convict Stevens on this count of using a wire or electronic communication to facilitate the possession of narcotic drugs.

### C. Use of Wire to Facilitate Possession (Count 20)

¶22 Count 20 alleged that Stevens, through a series of text messages to a person known as "Drunk Mike," used a wire to facilitate the crime of possession of narcotic drugs. The evidence to support Count 20 consisted of text messages sent back and forth between Stevens and Drunk Mike on February 6, 2011, and on February 7, 2011, in which Stevens agreed to sell Drunk Mike a "half g," and a third series of text messages on February 8, 2011, in which Stevens agreed to sell Drunk Mike "a gram" for "80."

¶23 Distinct from Counts 12 through 16, Stevens argues the evidence was insufficient because the State's expert testified that the "half g" and "gram" referred to in the texts could refer to either methamphetamine (a dangerous drug) or heroin (a narcotic drug), meaning it was equally likely the text messages were referring to dangerous drugs rather than narcotic drugs. The evidence shows, however, that Drunk Mike followed up the above referenced text messages with a text message to Stevens on February 9, 2011, complaining that "Kathy took all the h for herself" and asking if Stevens could "hook [him] up" with anything else. On this record, a reasonable jury could conclude beyond a reasonable doubt that Stevens had agreed to sell Drunk Mike heroin, which "Kathy" had thereafter used, thereby prompting Drunk Mike to ask Stevens if there was anything else he might

sell him. Therefore, sufficient evidence existed to convict Stevens on this count.

### D.      Offer to Sell Dangerous Drugs (Count 29)

**¶24**          Count 29 alleged that on February 1, 2011, Stevens knowingly offered to sell "methamphetamine, a dangerous drug." To support Count 29, the State offered into evidence a series of text messages between Stevens and a "Ronny Sims" in which Stevens agreed to sell "gphunk" to Sims. A detective testified that, under the circumstances, "gphunk" referred to methamphetamine. Stevens argues the detective was simply speculating. However, "the credibility of . . . witnesses and the weight and value to be given to their testimony are questions exclusively for the jury," not this Court. *State v. Cox*, 217 Ariz. 353, 357, ¶ 27, 174 P.3d 265, 269 (2007) (quoting *State v. Clemons*, 110 Ariz. 555, 556-57, 521 P.2d 987, 988-89 (1974)). Therefore, we find the evidence sufficient to support Stevens' conviction on this count.

## II.      Jury Instruction on Count 29

**¶25**          Lastly, Stevens argues the trial court improperly instructed the jury that the crime of sale of dangerous drugs, as charged in Count 29, required proof Stevens "knowingly offered to sell any dangerous drugs, including methamphetamine," when the indictment specifically alleged he offered to sell "methamphetamine, a dangerous drug." Stevens argues the instruction "improperly lowered the State's burden of proof by allowing the jury to convict if they thought 'gphunk' referred to *any* dangerous drug." As Stevens acknowledges, he failed to object to this instruction at trial, and we therefore review only for fundamental error, which requires Stevens prove the trial court erred, that the error was fundamental, and that the error caused him prejudice. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20, 115 P.3d 601, 607 (2005). Error is fundamental when it goes to the foundation of a defendant's case, takes from a defendant a right essential to his defense, and is "'error of such magnitude that the defendant could not possibly have received a fair trial.'" *Id.* at ¶ 19 (quoting *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984)). To prove prejudice, a defendant must show that a reasonable jury could have reached a different result if properly instructed. *State v. Dickinson*, 233 Ariz. 527, 531, ¶ 13, 314 P.3d 1282, 1286 (App. 2013).

**¶26**          Stevens has not met his burden to show fundamental, prejudicial error. In light of the detective's testimony that "gphunk" meant methamphetamine, and the parties' closing arguments, which specifically acknowledged that Count 29 alleged Stevens offered to sell

methamphetamine, there is no realistic prospect that the jury could have viewed Count 29 as alleging anything other than the offer to sell methamphetamine. *See State v. Bruggeman*, 161 Ariz. 508, 510, 779 P.2d 823, 825 (App. 1989) ("Closing arguments of counsel may be taken into account when assessing the adequacy of jury instructions."). Moreover, Count 29's verdict form identified the substance at issue as methamphetamine. On this record, we do not find fundamental error.

**CONCLUSION**

¶27 For the foregoing reasons, we vacate Stevens' convictions and resulting sentences for Count 12 and Counts 14 through 16, but affirm the balance of his convictions and sentences.

