BOLD RUNNER, The (GOVE v.). See Case No. 5,644.

BOLIER (REILING v.). See Case No. 11,-671.

---

## Case No. 1,608.

### The BOLINA.

### [1 Gall. 75.] [1]

Circuit Court, D. Massachusetts. May Term, 1812.

EMBARGO—ACT JAN. 9, 1809—SEIZURE — INFORMATION—SUFFICIENCY — PROCEEDING IN REM—AUTHORITY OF COLLECTOR — SUFFICIENCY OF NOTICE—DISTRICT COURTS—JURISDICTION.

1. In an information on the third section of the act of the 9th January, 1809, c. 72 [4 Bior. & D. Laws, 190; 2 Stat. 507], for not unloading, or giving bonds, the time of receiving the act at the port, where the offence was alleged to have been committed, and also of the notice to unload, were material and traversable.

2. In such an information, it was held insufficient to allege, that notice was given "to discharge the cargo, or to give bond, according to the law in such case provided." The nature of the requisition should have been stated, and to whom the notice was given, that the court might judge of its sufficiency.

3. A prosecution in rem, is authorized by the act 9th January, 1809, c. 72, and an information would have lain upon common law principles, even had no mode of prosecution been provided.

4. The collector, by that act, was authorized to seize for any violation, and would have had the right, even upon general principles.

5. To make such a seizure legal, it was not necessary that it should be made by the collector in person, or by his written authority; nor that a record of such seizure should be made.

6. The court has jurisdiction in revenue causes, although the property seized may never have come into possession of the officers of the court.
[Cited in U. S. v. The Reindeer, Case No. 16,-144.]
[See The Abby, Case No. 14; The Little Ann, Id. 8,397; The Merino, 9 Wheat. (22 U. S.) 401.]

7. Of the exchequer practice in England.

8. It was not necessary that the collector's notice, under this act, should specially state the requisitions of the act.

9. Cited in Robinson v. Hook, Case No. 11,-956, to the point that in information on seizures the informer is always, as seizor. named a par-

ty, and, if he is entitled to any share of the forfeiture, the judgment of the court ascertains and decrees it.]

[10. Cited in U. S. v. Trice, 30 Fed. 495, to the point that penal acts should be interpreted according to the manifest intent of the legislature.]

[Appeal from the district court of the United States for the district of Massachusetts.]

G. Blake, for United States.
Mr. Prescott, for claimant.

STORY, Circuit Justice. An information of seizure was, on the 13th February, 1809, filed against the Bolina and cargo, for not unlading her cargo, or giving bonds, pursuant to the 3d section of the act of January, 1809, c. 72 [4 Bior. & D. Laws, 190; 2 Stat. 507]. Upon the hearing in this court, the material facts appeared to be:—That on the 17th of January, 1809, the schooner Bolina lay at Newburyport, nearly laden with a cargo of fish and lumber. On the 16th or 17th of the same month, the act of the 9th of January, 1809, was received at the custom house at Newburyport. On the 17th of the same month, the collector of that port sent a written notice to the claimant, as follows. "Collector's office, Newburyport, 17th January, 1809. You are hereby required to comply with the requisitions of the law, by giving bond, or unlading your vessel, the schooner Bolina. I am, &c., Ralph Cross, Collector. Mr. Solomon Haskell." This notice was received by the claimant on the same day. A few days after, the collector called in person on the claimant, and told him he had better comply with the law, by unloading or giving bonds. It does not appear what the claimant's answer was to this recommendation. On the 21st of January, the claimant procured a policy to be underwritten on the vessel and cargo, against seizure and condemnation by the government. On the 28th of the same month, an officer of the customs was sent to the claimant to inform him that the ten days had expired; to which notice he returned no particular answer. On the 1st of February, the collector directed the surveyor of the customs to take possession of the schooner and cargo, as forfeited; which he accordingly did, and gave information of the seizure, on the evening of the same day, to the claimant. From this time to the 20th of December, 1809, the schooner and cargo remained in charge of the inspector of the customs, under the direction of the collector, and was then, upon application of the parties, sold by order of court. On the 23d of February, 1809, process was served on the vessel and cargo, according to the usual manner in revenue causes, and notice thereof was given to the person having charge of the schooner, and also by advertisements in the public newspapers. It was further in evidence, that sometime between the 9th and 20th of January, 1809, a public

---

[1] [Reported by John Gallison, Esq.]

meeting was had of many of the merchants of Newburyport. at which they voted not to give bonds according to the act of 1809 [supra], but it is not proved that the claimant was present.

A variety of grounds of defence have been presented to the court by the learned counsel for the claimant, and now remain for their decision.

1. It has been contended, that the act does not authorize any prosecution in rem, but confines the remedy for violations of it to personal suits. I do not think that this objection can be much relied upon, because the 12th section of the act authorizes all forfeitures under it to be recovered "by an action of debt, or by indictment or information." Now the latter is equally applicable to proceedings for penalties, and to proceedings in rem, for forfeitures. And it cannot be imagined, that the legislature should have decreed forfeitures in rem, and provided for their recovery either by action of debt, or indictment. And yet they must be presumed to intend, that these forfeitures might, in some shape, be recovered. The word information is therefore justly and rationally inserted by the legislature, for this purpose. But if there had been no mode of prosecution provided, I should have had no doubt that an information would have lain upon common law principles.

2. It is further contended, that the collector had no authority to make a seizure in this case, it not being within the express purview of any statute giving him authority to seize. To this it has been answered, that the case is within the 70th section of the collection act of 2d March, 1799 [1 Stat. 678], which enacts, that the several officers of the customs shall have authority to make seizures of vessels and goods, which shall be liable to seizure, under that act, or any other act of the United States thereafter made, respecting the revenue. I will not undertake to say how far the present may be such an act, because in my judgment, the resolution in the negative will not assist the claimant.[2] At common law, any person might seize uncustomed goods to the use of the king and himself, and thereupon inform for a seizure; and if the informer be not entitled to any part, the whole shall, on such information, be adjudged to the king. This doctrine is supported by the authority of Lord Hale (Harg. Law Tracts, 227); and better authority could not be; and by the judgment of the court in Roe v. Roe, Hardr. 185, and Malden v. Bartlett, Parker, 105. This right of seizure, as to the customs, was restrained to officers of the customs and others specially authorized by the statute 13 & 14 Car. II. c. 11, §§ 15, 17; but it remains in all other cases, as it stood at common law. On general principles. therefore, the objection would be without foundation. But upon the true construction of the act of [January 9] 1809 [2 Stat. 507], I apprehend, that custom-house officers are directly authorized. They are specially required to carry the act into effect; and in cases of seizure, other than by commanders of the public armed ships, the forfeitures are to be distributed according to the collection act of 2d March, 1799, section 91 [1 Stat. 697]. Now by that act, one moiety is in general adjudged to the collector, naval officer, and surveyor of the port or such of those officers as exist in the district; but if the forfeiture is recovered in pursuance of information from a third person, such informer is entitled to one half of the moiety. The other moiety belongs to the United States, unless in cases of information by an officer of a revenue cutter, in which latter case the officers of such cutter take a moiety, and the collector, and the United States, each one half of the remaining moiety. If this be true, it would certainly give an implied authority to the collectors and other informers to pursue, by seizure, the rights which the law attaches to them.

3. It is further objected. that even if the collector was duly authorized, the seizure was not lawfully made, because made by a verbal, and not a written authority of the collector, or by himself in person; and further, because no record or memorandum was made thereof. But I know of no statute requiring such authority to be in writing; and if the objection be well founded. it rides over all the ordinary revenue proceedings. Yet in point of practice, no such order has been usually given, nor deemed necessary; and certainly no record has been required of such seizure. And for what purpose should it be done? The seizure itself is full notice, for the possession is notorious and open. If wrongfully taken, the party has his remedy against the person in possession, even in the admiralty: If rightfully, the proceedings immediately advance into information and condemnation. I have looked into this subject (so far as the books would enable me) to learn the mode of proceeding in England. Lord Hale says (Harg. Law Tracts, 226), as to an information of seizure, which is against no person certain, the party that seizeth the goods, as uncustomed, prefers an information in the exchequer, praying that the goods may remain forfeit; upon which, there goes out a writ to appraise the goods, and upon the return of the appraisement, proclamation is made, that if any man will come in, he shall be heard. If upon or before this proclamation, the owner will come in and claim property, and plead, he may thereupon have the goods delivered upon security, if the same be bona peritura. But if none come in to plead to their forfeiture, judgment is given that the goods remain for-

[2] See Act Feb. 18, 1793 [1 Stat. 315], c. 8, § 27, which gives authority to officers of the customs to seize for any breaches of the laws of the United States.

feited, and this judgment concludes the party's interest; and it is but reasonable it should be so; for he hath notice of the suit by the seizure, by the appraisement, and by the proclamation in court. This is confirmed by other authorities. Malden v. Bartlett, Parker, 105; Mod. Pr. Exch. 141. And where a seizure is made, either in town or country, the officer seizing is by the exchequer rules required to transmit an account thereof to the solicitor of the customs, in order to have a writ of appraisement issued, and an information filed. Mod. Pr. Exch. 139. But it is no where stated, that it is necessary for the officer to make a record of his doings, although it was formerly necessary for him to prove, on the trial, the exact manner and method of seizure: but even this is now, by St. 9 Geo. II. c. 35, § 34, dispensed with; and the allegation of seizure stated in the information is held sufficient proof thereof, and the court is to try the merits, without further inquiry into the fact of seizure. Malden v. Bartlett, Parker, 105. I am therefore well satisfied, that the party can take nothing by this objection.

4. It has been also slightly contended, that upon the facts there was no seizure, but a mere possession and detention: but the possession was diligently followed up by an information of forfeiture: and it seems to me to have been as full and complete as any seizure could be.

5. It has been further contended, that it does not appear that the property ever was in the custody of the officers of the court, without which the court has no jurisdiction: and that the collector could have no legal custody after information filed, this not being a case within the 69th section of the collection act 2d March, 1799 [1 Stat. 678], but to be governed by the regulation of the act 8th May, 1792, § 4 [1 Stat. 277]. Now admitting this argument to be correct, and that I can notice the irregularity, if any exists, (which I think I cannot), still it seems to me, sufficient appears on the record and in the facts, to show that the schooner and cargo were taken into the custody of the court, for it has been sold by its order, and the proceeds are now within its control. The seizure is declared to be by the collector for the use of the United States; possession was held for this purpose at the time of the service of the process, and was afterwards continued with the assent of the marshal, and ought therefore to be adjudged his possession. Besides, the provision of the act 8th May, 1792, is not restrictive of the jurisdiction, but merely directory to the officer. Further; in the admiralty, in all proceedings in rem, the court has a right to order the thing to be taken into the custody of the law, and it is presumed to be in the custody of the law, unless the contrary appears; and when once a vessel is libelled, then she is considered as in the custody of the law, and at the disposal of the court, and monitions may be issued to persons having the actual custody, to obey the injunctions of the court. Jennings v. Carson, 4 Cranch [8 U. S.] 2. The jurisdiction of the admiralty however is not founded on that circumstance. It is notorious, that a condemnation may take place in a prize cause, even when the prize is lying within the port of an ally or a neutral, and this right of jurisdiction and condemnation equally applies to municipal seizures in the name of the sovereign, while the property is in a neutral port. Hudson v. Guestier, Id. 293. If indeed the possession of the sovereign be lost by recapture, or escape, or voluntary discharge, the courts may thereby lose the jurisdiction acquired by the seizure, but such loss is not to be presumed. On the instance side of the admiralty, its jurisdiction is not in general founded on possession of the thing. It may exercise complete jurisdiction as to seamen's wages, as to marine torts, as to collisions, and perhaps as to salvage, without it, and rest entirely on the process in personam. Nor is the objection well founded in the proceedings in the exchequer. As far as I can comprehend them, if the seized goods are not sold on the second proclamation, the seizing officer becomes by the judgment a debtor to the king for the amount of their appraised value, or so much of it, as belongs to the king, and chargeable accordingly. Mod. Pr. Exch. 143, 265, 269. But the king may elect to take the goods himself, or the share to which he is entitled; in which case the judgment is so rendered, and the seizing officer is, by the judgment, declared chargeable accordingly. Attorney General v. Lade, Parker, 57, 67, and cases therein cited. And where the informer or other bidder pays the appraised value, a writ of delivery issues to the commissioners of the customs, in whose custody it seems the goods have latterly been by virtue of the statute 12 Geo. I. c. 28, § 1, and where the goods remain with the seizing officer, and are to be specifically delivered up, a writ of delivery issues for this purpose. Mod. Pr. Exch. 221, 226, 229; Parker, 57. From this, as also from the preamble to the statute of 12 Geo. I., I gather, that previous to that statute, the goods seized had uniformly remained in the hands of the seizing officer; and thereby great frauds had been committed. That at no time had the officers of the court the custody of goods seized; and that the exchequer acted directly by its process upon the persons, in whose custody the goods seized were remaining. Nor do I perceive any inconvenience in this course, as all attempts of authority might be summarily redressed by the inherent powers of the court. But to return. The district court of the United States derives its jurisdiction, not from any supposed possession of its officers, but from the act and place of seizure for the forfeiture. Act Sept. 24, 1789, c. 20 [2 Bior. & D. Laws, 60; 1 Stat. 77, § 9]. And when once it has acquired a

regular jurisdiction, I do not perceive how any subsequent irregularity would avoid it. It may render the ultimate decree ineffectual in certain events, but the regular results of the adjudication must remain. I do not apprehend that an accidental destruction by fire would prevent the court from protecting its officers from prosecution, by pronouncing, if just, a regular condemnation.

6. A further objection is, that the notice given by the collector was in point of law wholly insufficient, and that, as the act is highly penal, every preliminary to the forfeiture should have been minutely and sedulously observed. Without doubt, penal actions are to be construed strictly; but when the language is plain, and the requisitions are clear, the court are bound to give them a reasonable interpretation. See The Harriet [Case No. 6,099]; U. S. v. Winn [Id. 16,740]. The section of the act now under consideration requires, that the owners of vessels laden in whole or in part, at the time when the act should be received at the several custom houses, "shall, on notice given by the collector, either discharge such cargo, or give bond for the same," pursuant to the act. Now it is said, that the notice should have been special, as to the time, within which the unloading or giving bonds must have been perfected. And it has been likened to cases of estoppel under the pauper act of Massachusetts (Act Feb. 26, 1793, § 12; 2 Mass. Laws, 627), and to suits for penalties for harboring paupers, contrary to the statute 10 Geo. II. c. 3, § 1, in which the notice required has been exacted with minute accuracy. 1 Mass. 459, 518; 4 Mass. 180, 273; 5 Mass. 86. It will be a sufficient answer to these cases to state, that the statute has prescribed, that the notice shall be in writing, and contain certain facts, and yet, I believe, that even the necessary allegations have been liberally expounded. I might dispose in the same way of the analogous cases of notices to be given to justices of the peace, and officers of the customs under statute 24 Geo. II. c. 44, § 1, and 28 Geo. III. c. 37, § 25, in which, though great strictness is required, yet the court have been satisfied with a substantial compliance. Osborn v. Gough, 3 Bos. & P. 551. In the present case no form is prescribed by the act, and no writing is directed. At the time when the notice was given, the act had been promulgated. It was known at Newburyport; and the claimant was by law bound to know and to conform to its requisitions. There was no other act in existence, which authorized the collector to make the demand, and this was known to the claimant, at least such is the presumption of the law. The notice which was given, demanded of him to unload the cargo of the Bolina, or give bonds "according to the requisitions of the law." It was certainly sufficient to put him upon inquiry. A few days afterwards he was again admonished by the collector; he makes no reply;

he asks no questions; and appears perfectly satisfied with the knowledge of the act, which he then possessed. Nay more, he shows, on the 21st of January, his perfect knowledge of the forfeiture, which might press upon him, and sought indemnity, not in a compliance with the act, which was still in his power, but by a policy of insurance against the very penalties, of which he now argues himself to have been ignorant. If when a notice is to be given to a man, and he voluntarily waives inquiry, or admits his own knowledge, and refuses to comply, a notice in technical form be still necessary, it certainly must be because the law is more indulgent to human infirmity than to strict personal rights. I confess myself somewhat embarrassed in disposing of this objection, and notwithstanding the strong facts indicating a pre-determined non-compliance with the law, if the cause were to rest upon it, perhaps I ought to incline to give the defendant the full benefit of the objection. But on this I give no absolute opinion.

7. But the last objection taken to the form and substance of the information, is in my judgment fatal, and as the parties have expressly waived all benefit of future amendments, I shall decide the cause on that ground. It is alleged in the information, that at the time when notice was received at the custom house for the port of Newburyport of the act, to wit, on the first day of February, the schooner Bolina was laden in whole or in part with a certain cargo of fish and lumber, and that there afterwards, on the same day, notice was given by the collector of said port to the owner or owners, consignee or factor, of said vessel, either to discharge the cargo of said vessel, or to give bond for the same, according to the law in such case provided. Now the time of receiving the act was material, for the offence could not be committed until after that time, and though laid under a videlicet, when material, it is equally traversable as if positively laid, and must be proved as laid. Hayman v. Rogers, 1 Strange, 233; Pope v. Foster, 4 Term R. 590; 2 Saund. 291, note 1; Rex v. Stevens, 5 East, 244. So too the notice to unload was material, and is laid on the same day, to wit, the 1st of February: yet in point of fact the seizure was on this day, and the notice was on the 17th of January preceding. The notice is alleged to be, either to discharge the cargo, or to give bond for the same according to the law in such case provided. I do not dwell on the want of the word "statute," because the objection is more substantial. Though a notice in pais may be good without technical precision, yet in an information there should be legal certainty, and the nature of the requisition should be stated. When notice is required by a statute, it should be shown, what that notice is; and it is not sufficient to say, it is according to law, for of that the court must judge. 1 Saund. 33; 5 Term R. 409; Com.

Dig. tit. "Pleader," 69, 70, 73, 74; 1 And. 62; Lutw. 1089; Plow. 376b.; 3 Term. R. 636. Further, it is not alleged to whom the notice was given. Now although a notice either to the owner, consignee or factor might be good, yet it ought to be averred to have been given to some person in particular; otherwise the party could never be prepared to meet the allegation.

On the whole, I think on this last point the decree of the court below ought to be affirmed, but I shall certify reasonable cause of seizure.

NOTE [from original report]. After the cause was fully argued, and the court was about to deliver the above opinion, the cause was compromised by the parties, so that no decree was actually pronounced.