912 P.2d 39

**In the Matter of ONE SINGLE FAMILY RESIDENCE AND REAL PROPERTY LOCATED AT 15453 NORTH SECOND AVENUE, Bearing Legal Description of Lot Forty–Nine (49), Puerta Vieja II, (2) One 1975 Chevrolet Corvette Bearing VIN 1Z37J5S428338; and (3) One 1968 Dodge Charger Bearing VIN XP29F8B201665.**

**STATE of Arizona, ex rel., Grant WOODS, Attorney General, Plaintiff–Appellant,**

v.

**Marjorie SIGMAN, Claimant–Appellee.**

No. 1 CA–CV 94–0261.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 15, 1996.

Grant Woods, Attorney General by Cameron H. Holmes, Katrin M. Nelson, Assistant Attorneys General, Phoenix, for Plaintiff–Appellant.

C. Kenneth Ray, II, Phoenix, for Claimant–Appellee.

## OPINION

EHRLICH, Judge.

Two important issues in the field of forfeiture law are raised in this appeal. The first concerns jurisdiction over a forfeiture appeal when the *res* has been released from the actual or constructive custody of the court. The second involves the breadth of the statutory provisions regarding the forfeitability of property used or intended to be used in the facilitation of a drug offense. We conclude that this court maintains jurisdiction over the appeal despite the release of the properties to the claimant. In so holding, we depart from the previous opinion of this court in *In re $113,888 United States Currency (Rende v. State)*, 168 Ariz. 229, 812 P.2d 1047 (App. 1990). On the merits of this case, when a party to a drug transaction offers his property as collateral for an up-front payment of the purchase price of the drugs, the property is forfeitable despite the fact that the payment was not made and, thus, the property never was used as the intended collateral.

### FACTS AND PROCEDURAL HISTORY

■ The state initiated this forfeiture proceeding by filing a complaint on October 24, 1988, seeking to forfeit residential property located at 15453 North Second Avenue, Phoenix; residential property located in Lakeside, Arizona; a 1977 Ford pickup truck; a 1975 Chevrolet Corvette and a 1968 Dodge Charger. The complaint alleged that the properties were forfeit based on the actions of John Sigman, the husband of claimant Marjorie Sigman. The state asserted that John Sigman, in the course of negotiating the sale of six kilograms of cocaine, offered the two residences, the truck and the Corvette as collateral to secure from the buyer (who turned out to be Gilbert Howard, an undercover narcotics officer) the advance payment or "fronting" of the purchase price, and offered the Charger to the suppliers as collateral for a sample of the cocaine.[1]

---

1. Marjorie Sigman takes issue with the state's version of the facts, arguing that the relevant facts are those set forth in the transcript of the probable cause hearing on the Lakeside property, apparently because that was to what she referred in her motion for judgment on the pleadings. Sigman provides no authority for this argument. To the contrary, in reviewing a motion for judgment on the pleadings, all material allegations of the opposing party's pleadings are deemed to be true. *Food for Health Co. v. 3839 Joint Venture,* 129 Ariz. 103, 106, 628 P.2d 986, 989 (App. 1981). It thus would be inappropriate to limit the facts to those adduced in the probable cause hearing. However, while it is true that the transcript, material outside the pleadings, was considered in the motion for judgment on the pleadings and thus the motion could have been treated as one for summary judgment, Ariz.R.Civ.P. 12(c); *Crook v. Anderson,* 115 Ariz. 402, 403, 565 P.2d 908, 909 (App.1977), the transcript in essence neither added to nor subtracted from the

The record contains two notices of claim, filed by Marjorie and John Sigman, asserting ownership of the Charger. While the record contains no other filed notices of claims, and the Sigmans' answer did not specify in which of the properties they had an interest, claims relating to the other properties were litigated. For example, in response to the state's motion for summary judgment, the Sigmans asserted ownership of the Phoenix residence, the Corvette and the Charger. In addition, a probable cause hearing was conducted regarding the Lakeside property, which was claimed by Joanna Weeks, John Sigman's sister. As neither party disputes that other notices of claims were properly filed—indeed, the state's motion for summary judgment asserts as much—we proceed on the assumption that all proper filings were made.

At the probable cause hearing on the Lakeside property, the state attempted to show that John Sigman had offered the property as collateral for Howard's "fronting" of the purchase price. Weeks defended by claiming that she owned the property, not John Sigman. The trial court barred the state's attempts to adduce evidence that, although the deed to the property was in Weeks' name, Sigman was the actual owner. *Cf. In re One 1983 Toyota*, 168 Ariz. 399, 402, 814 P.2d 356, 359 (App.1991) (presumption of ownership of vehicle arising from certificate of title rebuttable). The court reasoned, in part, that, because Sigman did not present documentation to Howard showing title to the property nor a power of attorney from the record-owner, he did not have the ability to transfer the property. Based in part on that reasoning, the court found no probable cause to believe that the Lakeside property was subject to forfeiture and granted Weeks' motion to dismiss as to that realty.

Subsequently, on March 20, 1991, the trial court entered judgment enforcing a settlement between Marjorie Sigman and the state in which Sigman agreed that a $25,000 judg-

ment would be entered against her in exchange for the state's relinquishment of its claims to the Phoenix residence, the Ford, the Corvette and the Charger. Sigman appealed and this court reversed, holding the oral agreement unenforceable under Arizona Rule of Civil Procedure ("Rule") 80(d). *In re One Single Family Residence and Property Located at 15423 North Second Ave., Phoenix, Arizona*, No. 1 CA–CV 91–0339 (memo. dec., App., July 6, 1993).

On remand, Marjorie Sigman filed a "motion for judgment on the pleadings" pursuant to Rule 12(c). She argued, in part, that John Sigman did not have the legal power to transfer title to the vehicles or to the Phoenix residential property. She also argued that the properties were not forfeitable because the transaction that took place "proceeded wholly independent of the documents relating to the property in question."

Although the trial court rejected the claim that John Sigman had no interest in the properties, ruling that, with the exception of the Charger,[2] John Sigman "had the legal ability to transfer title," it nonetheless sided with Marjorie Sigman and granted the motion. The court's minute entry reflected that:

> John had the legal ability to transfer title BUT HE DID NOT DO SO and was never requested to do so. The transaction proceeded wholly independent of the property and the property played no role in the drug deal.
>
> The arrest occurred PRIOR TO any overt act to collateralize the property. More significantly, the property was to collateralize the "fronting of money". No cash was ever transferred (fronted), so there was no need for collateral.
>
> The requirements of the statute were not met, i.e.: the property was not USED or INTENDED TO BE USED in any man-

---

pleadings and need not be treated as a motion for summary judgment. *Brosie v. Stockton*, 105 Ariz. 574, 576, 468 P.2d 933, 935 (1970). In a motion for judgment on the pleadings, the well-pleaded allegations of the complaint are treated as true, *Shannon v. Butler Homes, Inc.*, 102 Ariz. 312, 315, 428 P.2d 990, 993 (1967), and the motion should only be granted if the moving

party is clearly entitled to judgment. *Food for Health*, 129 Ariz. at 106, 628 P.2d at 989.

2. In their claims, the Sigmans asserted that John Sigman had transferred to Marjorie Sigman all his interest in the Charger.

ner or part to facilitate the commission of the offense.

Marjorie Sigman moved to amend the trial court's ruling to delete the reference to the Ford on the basis that she had waived any claim therein and that John Sigman's interest already had been adjudicated by his criminal conviction and the truck sold by the state. The court granted the motion to amend and entered judgment for Sigman as to the Phoenix residence, the Corvette and the Charger. The state timely appealed.

## DISCUSSION

### I. Jurisdiction: Release of the Properties

■ Sigman has moved to dismiss this appeal, contending that this court lacks jurisdiction. Relying on *Rende*, 168 Ariz. 229, 812 P.2d 1047, she asserts that, because, in the judgment enforcing the settlement agreement, the trial court had ordered the release of the Phoenix residence, the Corvette and the Charger, and that the release had occurred,[3] the *res* is no longer in the actual or constructive possession of the court and there is no subject matter.[4]

In *Rende*, this court said that the "prerequisite to a court's exercise of *in rem* jurisdiction in a forfeiture proceeding is the court's actual or constructive possession of the property to be forfeited." *Id.* at 232, 812 P.2d at 1050.

It is settled in the federal courts that where the claimant fails to timely file an appeal and move for a permanent stay, release or removal of the *res* from the control of the court ends the court's in rem jurisdiction.

The only exception to this general rule is when the *res* is released accidentally, fraudulently or improperly. *The Rio Grande*, 90 U.S. (23 Wall.) 458, 23 L.Ed. 158 (1874). In *The Rio Grande*, a vessel was seized by the United States Marshal on materialmen's libels. The United States District Court determined that the libellants' claims did not give rise to maritime liens, and dismissed the libels. Immediately thereafter, the court granted the libellants an appeal and fixed supersedeas bonds, which were posted and approved. In the meantime, the vessel's mortgagees nevertheless managed to obtain an order releasing possession of the vessel to them, and sold it. Their purchasers later claimed that the release order had destroyed the circuit court's appellate jurisdiction in the materialmen's appeal. The United States Supreme Court disagreed, stating:

> The appeal was taken and allowed before any order of discharge was granted, and the bonds required to make the appeal a stay of proceedings were given within the time required by the statute.
>
> . . . . .
>
> We hold the rule to be that a valid seizure and actual control of the *res* by the marshal gives jurisdiction of the subject matter, and that an accidental or fraudulent or improper removal of it from his custody, or a delivery to the party upon security, does not destroy jurisdiction.

90 U.S. (23 Wall.) at 463, 465.

Where the *res* in a forfeiture action is released pursuant to a forfeiture judgment that has not been stayed or superseded on appeal, however, the federal courts deem *The Rio Grande* exception inapplicable and conclude that the appellate court lacks jurisdiction to examine the propriety of release of the *res*.

168 Ariz. at 232, 812 P.2d at 1050 (additional citations omitted). *Cf. In re $70,269.91 in U.S. Currency (State v. Benson)*, 172 Ariz. 15, 19, 833 P.2d 32, 36 (App.1991) (release of *res* improper because in violation of court's order; court of appeals retained jurisdiction).

---

3. Although the record does not reflect that the properties have been released and Marjorie Sigman does not present any affidavit attesting to a release, the state has not contested this fact. We therefore assume that the properties have been released.

4. Sigman also relies on *In re 1976 Porsche Automobile*, 141 Ariz. 421, 424, 687 P.2d 946, 949 (App.1984), in which this court held that a trial court did not obtain *in rem* jurisdiction when the *res* had been unlawfully seized. There is no contention in this case that the seizure of the properties was unlawful.

There is no contention that the release of the properties was improper, fraudulent or mistaken; it appears that the release was in complete accord with the trial court's judgment of March 20, 1991. Consequently, if *Rende* remains the law, this court lacks jurisdiction over the appeal. We conclude, however, that *Rende* should be reconsidered.

The court in *Rende* relied on federal cases holding that release of the *res* defeats a court's jurisdiction. However, the United States Supreme Court has overruled the federal authorities providing the rationale in *Rende*, stating, in *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 83–84, 113 S.Ct. 554, 557, 121 L.Ed.2d 474 (1992), that there is no such rule. The Court noted that, while a valid seizure of the *res* was necessary for the *initiation* of a forfeiture proceeding, *id.*, this did not equate with the proposition that continuing possession must be maintained to preserve jurisdiction. *Id.* at 85–86, 113 S.Ct. at 558. It rejected the resolution adopted in *Rende* that *The Rio Grande* merely states an exception to a general requirement of continuing judicial possession:

> [I]n *The Rio Grande*, this Court held that improper release of a ship by a marshal did not divest the Circuit Court of jurisdiction. "We do not understand the law to be that an actual and continuous possession of the res is required to sustain the jurisdiction of the court. When the vessel was seized by the order of the court and brought within its control the jurisdiction was complete." 90 U.S. (23 Wall.), at 463. The Court there emphasized the impropriety of the ship's release. The Government now suggests that the case merely announced an "injustice" exception to the requirement of continuous control. *But the question is one of jurisdiction, and we do not see why the means of the res' removal should make a difference.*

*Id.* (emphasis added) (footnote omitted).

Marjorie Sigman argues that jurisdiction is defeated because the release of the properties means that any judgment of forfeiture will be of no avail. The Court in *Republic National Bank* rejected this argument too.

The district court of the United States derives its jurisdiction, not from any supposed possession of its officers, but from the act and place of seizure for the forfeiture.... And when once it has acquired a regular jurisdiction, I do not perceive how any subsequent irregularity would avoid it. It may render the ultimate decree ineffectual in certain events, but the regular results of the adjudication must remain.

*Id.* n. 4, quoting *The Bolina*, 3 F.Cas. 811, 813–814 (CC Mass.1812) (No. 1608) (Story, J., as Circuit Justice). *Accord* 1 J. Wells, A TREATISE ON THE JURISDICTION OF COURTS 275 (1880) (actual or constructive seizure provides jurisdiction in admiralty forfeiture action: "And, having once acquired regular jurisdiction, no subsequent irregularity can defeat it; or accident, as, for example, an accidental fire") (as quoted in *Republic Nat'l Bank*, 506 U.S. at 86 n. 4, 113 S.Ct. at 558 n. 4).

When a decision in this court is based on federal cases and the federal case law changes, it is prudent to reexamine our precept. *Cf. James, Cooke & Hobson, Inc. v. Lake Havasu Plumbing & Fire Protection*, 177 Ariz. 316, 318–19, 868 P.2d 329, 331–32 (App.1993). The analysis expressed in *Republic National Bank* is sound; a court's lawful jurisdiction should not be readily thwarted. We see no logic to depart from that rule here and therefore accept the holding in *Republic National Bank* and no longer follow *Rende*. The release of the properties in this case deprived neither the superior court nor this court of jurisdiction.

## II.  Merits:  Forfeitability

### A.  Inapplicability of 1986 Chevrolet Corvette Case

■ Marjorie Sigman argues that this case is controlled by *In re 1986 Chevrolet Corvette*, 183 Ariz. 637, 905 P.2d 1372 (1994). She first argues that, because she is not a "criminal," her property is not subject to forfeiture, relying on the following statement from that case: "While 'proceeds' statutes deprive the criminal of the *fruits* of his or her crime, 'facilitation' statutes allow forfeiture of the *tools* of the crime." *Id.* at 640, 905 P.2d at 1375 (emphasis original). She

also argues that the case supports her contention that, because the properties at issue were not necessary components of the conduct leading to the arrest of John Sigman, they are not forfeitable, again relying on a single statement from the opinion: "The Corvette was simply not a tool—either as a vehicle or as a money substitute—used in the *commission* of any offense." *Id.* at 641, 905 P.2d at 1376 (emphasis original). Neither argument has merit.

In *1986 Chevrolet Corvette*, the state argued for the forfeiture based on the following facts: The claimant was arrested while transporting marijuana for a man named Robert and the marijuana was confiscated. Some time thereafter, the claimant purchased the Corvette. Robert, who blamed the claimant for the loss of the marijuana, also was angry with him for an alleged $12,000 burglary of Robert's apartment and because the claimant had become acquainted with Robert's ex-girlfriend. Robert demanded that the claimant pay him $18,000 on pain of physical harm. The claimant signed over the Corvette with an agreement that, if he paid $18,000 by a certain date, the Corvette would be returned. Under these circumstances, the state sought to forfeit the Corvette on this theory:

> Petitioner and others conspired to transport 400 pounds of marijuana. This conspiracy was intercepted by law enforcement officers. By losing the marijuana, petitioner incurred a debt to Robert, which he paid in part by turning over the Corvette. This transfer "facilitated" the crime by compensating Robert for the lost drugs.

*Id.* at 640, 905 P.2d at 1375.

Within this setting it becomes clear that Sigman has lifted her quotations out of context. The first statement on which Sigman relies was simply the court's description of the difference between forfeitures of proceeds and forfeitures of the tools of the crime. The court's use of the word "criminal" in that circumstance is not surprising or

even relevant because the claimant had committed the crime; his innocence was not an issue.[5]

The same is true of the court's use of the statement that the Corvette was not "used in the *commission* of any offense." *Id.* at 641, 905 P.2d at 1376. This phrase does not carry the import ascribed to it by Sigman, *i.e.*, that the property must actually be instrumental in the commission of an offense before it is forfeitable. Once again, that was not relevant in *1986 Chevrolet Corvette;* the pertinent crime had been committed. Indeed, the facts of *1986 Chevrolet Corvette* make its holding somewhat limited; the court simply held:

> The car in this case "facilitated" nothing other than perhaps the avoidance of physical or other harm to petitioner, if his tale of Robert's threats is to be believed. We therefore uphold the trial court's finding that the state failed to demonstrate probable cause for forfeiture.

*Id.* at 641, 905 P.2d at 1377. *1986 Chevrolet Corvette* has no application here.

## B. "Used or Intended to be Used"

We now examine the application of the forfeiture statute in this case. The transaction was this: John Sigman sought to set up a deal for the sale of six kilograms of cocaine to Howard. Sigman's suppliers would not hand over the cocaine until they were paid, but, because Howard refused to "front" the money without some form of security, Sigman offered the Phoenix and Lakeside parcels and the Corvette and the Ford vehicles as collateral. He also gave the Charger to his suppliers in order to obtain one kilogram of the cocaine, which was to be provided to Howard as a sample. Before Howard gave the money to Sigman, the part of the transaction for which the security was necessary, and before the cocaine was transferred to Howard, the police arrested Sigman. He was convicted for the drug transaction and

---

5. One of the trial court's main concerns in the hearing on the Lakeside parcel was that John Sigman's name was not on the deed. If the state could forfeit that property under those circumstances, the judge reasoned, then even the judge's house could be forfeited if a criminal offered it as collateral in a drug deal. However, the case was dismissed based on the court's conclusion that there was no probable cause and the innocent owner defense of Ariz.Rev.Stat.Ann. section 13–4304(3) lost pertinence.

the state instituted this forfeiture in accordance with the following statute:

> [T]he state may file an action pursuant to chapter 39 of this title for forfeiture . . . of:
>
> \*    \*    \*    \*    \*    \*
>
> 3. ... [A]ll monies, negotiable instruments, securities, property and other things of value used or intended to be used in any manner or part to facilitate the commission of the offense.

Ariz.Rev.Stat.Ann. ("A.R.S.") § 13–2314(G).[6]

Marjorie Sigman argued before the trial court that the Phoenix residence and the Corvette, the only properties still at issue, were not subject to forfeiture under the statute. The court agreed, ruling:

> As to [the Phoenix residence and the Corvette,] John had the legal ability to transfer title BUT HE DID NOT DO SO and was never requested to do so. The transaction proceeded wholly independent of the property and the property played no role in the drug deal.
>
> The arrest occurred PRIOR TO any overt act to collateralize the property. More significantly, the property was to collateralize the "fronting of money". No cash was ever transferred (fronted), so there was no need for collateral.
>
> The requirements of the statute were not met, i.e.: the property was not USED or INTENDED TO BE USED in any manner or part to facilitate the commission of the offense.

The issue becomes whether John Sigman intended to use or used the properties to facilitate the commission of the offense. We conclude that the trial court's focus on the actual use of the properties and, apparently, whether the transaction was completed was too narrow.

"Facilitate" has been defined as "[t]o free from difficulty or impediment," BLACK'S LAW DICTIONARY 591 (6th ed. 1990), and "to make easier or less difficult; help forward (an action, a process, etc.)." RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 509 (1981). *See also United States v. Premises Known as 3639 2nd St., N.E.*, 869 F.2d 1093,

1096 (8th Cir.1989) (making prohibited conduct less difficult); *United States v. One 1977 Lincoln Mark V Coupe*, 643 F.2d 154, 157 (3d Cir.) (freeing from obstruction or hindrance), *cert. denied*, 454 U.S. 818, 102 S.Ct. 97, 70 L.Ed.2d 88 (1981).

Drawing on this concept, courts have found facilitation based on the federal forfeiture statutes in the following cases: *United States v. One 1974 Cadillac Eldorado Sedan*, 548 F.2d 421 (2d Cir.1977) (vehicle used for transportation to prearranged meeting concerning illegal drug sale and to site of sale); *United States v. One 1979 Mercury Cougar XR–7*, 666 F.2d 228 (5th Cir.1982) (vehicle used to locate suitable landing strip and other facilities for smuggling flight); *One 1977 Lincoln Mark V Coupe*, 643 F.2d at 157 (vehicle used as excuse for drug meeting parked with hood up and people looking at engine). Courts also have found facilitation when property was pledged to enable a transaction to proceed. In *Boas v. Smith*, 786 F.2d 605 (4th Cir.1986), the claimant induced undercover officers to provide money to finance the rigging of a boat for a drug-smuggling venture by giving them a promissory note secured by real property. The court found this to be facilitation and forfeited the note. *Id.* at 609. In *United States v. RD 1, Box 1, Thompsontown*, 952 F.2d 53 (3d Cir.1991), the claimant pledged his home as security to obtain a loan he intended to use to buy marijuana. Even though he used other, borrowed funds to purchase the marijuana, the court found facilitation and forfeited the property. *Id.* at 57–58.

In the present case, if the transaction had concluded as John Sigman intended, had he not been arrested after furnishing the sample of cocaine, the properties' use as collateral for the front money would have facilitated the crime. Without the front money, Sigman's suppliers would not have delivered the cocaine and, without the properties as collateral, Howard was not going to release the front money. Facilitation is present here.

The trial court ignored the negotiations and events preceding the arrest in concluding that, because the money was never front-

---

**6.** When this action was filed, it was section 13–    2314(F). We will refer to its current numbering.

ed and the collateral therefore never actually released, the properties were neither used nor intended to be used to facilitate the crime. It has been contended that the properties actually were used to facilitate the offense because the negotiations continued after John Sigman offered the properties to Howard to secure the latter's money. However, we need not resolve that argument because Sigman's offer of the properties was sufficient to show his intent to so use them to facilitate the sale of illegal drugs.

That leaves us with the trial court's apparent concern that the properties were not connected with an actual, completed drug sale. This apprehension is misplaced. The "offense" referred to in A.R.S. section 13–2314(G) is a racketeering violation.

> "Racketeering" means any act, *including any preparatory or completed offense, ...* committed for financial gain, which is chargeable or indictable under the laws of the state in which the act occurred ... and ... punishable by imprisonment for more than one year, regardless of whether such act is charged or indicted, involving:
>
> \*     \*     \*     \*     \*     \*
>
> (k) Prohibited drugs.... [Emphasis added.]

A.R.S. § 13–2301(D)(4)(k). The statute does not require a completed offense. In *In re $10,098.00 in U.S. Currency,* 175 Ariz. 237, 854 P.2d 1223 (App.1993), the issue was whether the lack of a completed offense precluded forfeiture under section 13–3413(A). That section, like section 13–2314(G), provides for the forfeiture of "items used or intended for use in violation" of the drug statutes. *Id.* at 239, 854 P.2d at 1225. This court stated:

> [B]ecause the statute allows forfeiture of items not only used but also *intended for use* in violation of the drug offense statutes, it expressly does not require completion of a Chapter 34 crime or even the "possibility" of such a completed offense. Therefore, it is irrelevant that [the claimant] may not have been able to actually purchase the marijuana from [the undercover officer] through the reverse buy operation.

*Id.* at 240, 854 P.2d at 1226 (emphasis added).

A case with facts similar to those here is *United States v. 26.075 Acres More or Less,* 687 F.Supp. 1005 (E.D.N.C.1988), *aff'd in part, rev'd in part sub nom. United States v. Santoro,* 866 F.2d 1538 (4th Cir.1989). There, Santoro sought to serve as the intermediary in a cocaine sale to a person who turned out to be an undercover narcotics agent. She had sold the agent small quantities of cocaine on several occasions, each taking place on a parcel of property containing her residence. Santoro indicated to the agent that she would pledge the property as collateral to ensure that her source would proceed with a deal, which later occurred outside Santoro's presence. She was prosecuted and the farm forfeited. Disposing of her argument that only a portion of the property, which was divided by a road, could be subject to forfeiture, the court stated:

> Viewed in light of the purpose of civil forfeiture in general, and as applied in the context of drug trafficking, whether property *actually* is occupied or physically employed in order to engage in a drug transaction, or whether its occupation or use merely is offered to induce another to do so seems to the court to be immaterial, particularly in light of the statutory language "used or *intended to be used*"....

*Id.* at 1017 (emphasis added).

We agree with the court's reasoning in *26.075 Acres.* The phrase "intended to be used" indicates a legislative intent that the scope of forfeiture be quite comprehensive. John Sigman intended to use the properties to facilitate the drug transaction when he offered them as security. The only interruption preventing the properties from actually being pressed into use was the fact that he was arrested prior to the consummation of the deal.

Like the Arizona statutes, federal statutes allow forfeiture if property is used or intended to be used "in any manner or part." Despite this broad language, there is a debate among the federal courts of appeal as to the proper standard to apply in determining whether property is used to facilitate a crime. Some courts follow a broad rule: The

property is subject to forfeiture if it has a nexus to the crime that is "more than incidental or fortuitous." *E.g., United States v. One Parcel of Real Estate Commonly Known as 916 Douglas Ave.,* 903 F.2d 490, 494 (7th Cir.1990), *cert. denied,* 498 U.S. 1126, 111 S.Ct. 1090, 112 L.Ed.2d 1194 (1991). Others favor a more narrow construction: There must be a "substantial connection" between the property and the crime. *E.g., Santoro,* 866 F.2d at 1542. In *1986 Chevrolet Corvette,* the Arizona Supreme Court declined to decide which test to adopt, 183 Ariz. at 641, 905 P.2d at 1376, and we need not resolve that issue now either. If the more strict "substantial connection" rule were followed, forfeiture would be appropriate here. John Sigman's suppliers were not going to give him the cocaine until paid and Howard was not going to front the money unless it was secured. Sigman's offer of the properties to secure the front money clearly had a "substantial connection" to the drug deal. *Cf. RD 1, Box 1,* 952 F.2d at 57–58.

### CONCLUSION

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

THOMPSON, P.J., and
KLEINSCHMIDT, J., concur.