88 P.3d 1154

Dennis J. REINKE, Plaintiff–Appellant,

v.

ALLIANCE TOWING; Richard Polanko, Defendants–Appellees.

No. 1 CA–CV 03–0324.

Court of Appeals of Arizona, Division 1, Department C.

April 29, 2004.

Dennis J. Reinke, Buckeye, In Propria Persona Plaintiff–Appellant.

Robbins & Green, P.A. By Bruce M. Phillips, Phoenix, Attorney for Defendants–Appellees.

## OPINION

GEMMILL, Judge.

¶ 1 In this dispute between a person claiming to own a Corvette and a towing company claiming the Corvette was abandoned, we hold that a person may possess legal title to an automobile even though he has neither applied for nor received a certificate of title issued in his name from the Motor Vehicle Division of the Arizona Department of Transportation.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Dennis J. Reinke appeals the summary judgment entered in favor of Alliance Towing and Richard Polanko.[1] In reviewing a sum-

1. We refer to Alliance Towing and Polanko col-       lectively as "Alliance" in this opinion unless the

mary judgment, we view the evidence and all reasonable inferences therefrom in a light most favorable to the party opposing summary judgment. *See Hill–Shafer P'ship v. Chilson Family Trust,* 165 Ariz. 469, 472, 799 P.2d 810, 813 (1990). In opposing Alliance's motion for summary judgment, Reinke presented evidence supporting the following facts.

¶ 3 In November 1999, Reinke purchased a 1986 Chevrolet Corvette from Paula Parris. On the back of the title document, Reinke's name was inserted as buyer and Parris signed as seller, with notarization. Reinke had not yet applied for a certificate of title in his name from the Motor Vehicle Division ("MVD") when, on December 21, 1999, he was stopped by the police while driving the Corvette. The title document was in the glove box of the car.

¶ 4 Reinke was arrested and charged with aggravated driving under the influence of intoxicating liquor. The Corvette was moved to a Circle K parking lot by a police officer and the keys were returned to Reinke, who was in police custody. Two days later, on December 23, an employee from Circle K called Alliance to have the car removed from the parking lot. Alliance towed the car from the Circle K and stored it at Alliance's storage yard.

¶ 5 On January 14, 2000, Reinke, who remained incarcerated, executed a document purporting to be a power of attorney giving Ronald Turner "control over all property including automobiles." After receiving the power of attorney and the car keys, Turner went to Alliance to take possession of the Corvette for Reinke. The owner of Alliance, Richard Polanko, told Turner that only the owner of the car could pick it up and that the power of attorney looked like a forgery. Alliance retained possession of the car.

¶ 6 On January 26, 2000, Alliance completed a "Report of Abandoned Vehicle" regarding the Corvette. Questions two and four in the report form asked:

2. During the period of your possession, has anyone contacted you or your agents claiming ownership or right of possession to the vehicle described on this report?

. . . .

4. Do you have information of the name and/or address of the legal owner or lienholder of this vehicle or have any information regarding registration or ownership of this vehicle?

Polanko checked the "No" box in response to both questions. Polanko's signature appears on this form directly below the statement: "I further certify that I will immediately advise the Motor Vehicle Division, Abandoned Vehicle Section if contacted by any person regarding ownership of the vehicle." This form was submitted to the MVD.

¶ 7 Reinke's attorney sent Alliance a letter dated February 21, 2000, asserting Reinke's ownership of the car, offering to pay accrued storage costs, and stating Reinke had executed a valid power of attorney giving Turner the authority to take possession of the car. The letter asked Alliance to cooperate with Turner.

¶ 8 On February 26, 2000, the car was inspected by an MVD inspector. Alliance then received an "Abandoned Vehicle Authorization for Transfer of Title" form from the MVD. This form was signed by Polanko and submitted to MVD along with an application for title to the Corvette in Alliance's name. The "Abandoned Vehicle Authorization for Transfer of Title" form contains this certification:

I hereby certify, under penalty of perjury, that as of the date of application no contact has been made for the return of the vehicle by the owner, lienholder, or any other person having an interest in the vehicle. I further certify that the vehicle described on this form is currently in my possession.

The MVD issued title to the Corvette to Alliance on February 29, 2000. Alliance later sold the car.

¶ 9 Reinke filed an action against Alliance and Polanko, alleging that they provided false information to the Arizona Department of Transportation in order to gain possession of the car. Reinke requested $10,000 in

context requires otherwise.

damages for the value of the car plus other relief.

¶ 10 Alliance filed a motion for summary judgment that was initially denied but ultimately granted by the trial court. The thrust of Alliance's position, both at the trial court and on appeal, is that Reinke was not the "owner" of the Corvette because Reinke had not applied for and received from the MVD a certificate of title in his name. And because Reinke was not the "owner of record," Alliance claims that it acted in accordance with Arizona statutes in pursuing and obtaining title to the Corvette as an abandoned vehicle. The trial court, in granting summary judgment in favor of Alliance, stated that Reinke had not proven that "he was the owner of the vehicle for purposes of the issues in this case."

## ANALYSIS

¶ 11 Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Orme Sch. v. Reeves,* 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990). We independently review both the propriety of summary judgment and issues of statutory interpretation. *Arizona Health Care Cost Containment Sys. v. Bentley,* 187 Ariz. 229, 231, 928 P.2d 653, 655 (App.1996).

¶ 12 In reaching its conclusion that Reinke had not demonstrated a genuine issue of material fact regarding his ownership of the Corvette, the trial court evidently agreed with Alliance that ownership for purposes of this dispute required issuance by the MVD of a certificate of title in Reinke's name. Arizona Revised Statutes ("A.R.S.") section 28–101(36)(a) (1998) defines an "owner" of a vehicle as a "person who holds the legal title of a vehicle." [2] Alliance argues that "legal title" means record title. The term "legal title" is not, however, specifically defined in our statutes.

¶ 13 Alliance contends that several statutes from Title 28, including §§ 28–2058, –2059, –4835, and –4841, collectively demonstrate that the legally-recognized owner of a vehicle is the owner of record with the MVD, rather than a transferee of the owner of record. Section 28–2058 (Supp.2003) describes the transfer of title of a vehicle:

A. When the owner of a registered or unregistered vehicle *transfers or assigns the owner's title* or interest to the vehicle:

1. If the vehicle is registered:

(a) The owner shall *endorse on the certificate of title* to the vehicle an assignment with the warranty of title in the form printed on the certificate.

(b) Except as provided in § 28–2094, the owner shall *deliver the certificate to the purchaser or transferee at the time of delivery of the vehicle to the purchaser or transferee.*

. . . .

(d) Except as provided in § 28–2091, the acquiring owner shall apply for registration or title, or both, within fifteen days [3] *after the relinquishing owner transfers or assigns the relinquishing owners' title or interest in the vehicle . . . .*

(Emphasis added.)

¶ 14 These provisions support the position of Reinke rather than Alliance. Sub-

---

**2.** The current version of this definition is § 28–101(37)(a) (Supp.2003) and will become § 28–101(39)(a) on July 2, 2004. 2003 Ariz. Sess. Laws, ch. 168, § 1. In this opinion we will cite that version in effect at the time of these events. Section 28–101(36), in its entirety, stated:

"Owner" means:
(a) A person who holds the legal title of a vehicle.
(b) If a vehicle is the subject of an agreement for the conditional sale or lease with the right of purchase on performance of the conditions stated in the agreement and with an immediate right of possession vested in the conditional vendee or lessee, the conditional vendee or lessee.
(c) If a mortgagor of a vehicle is entitled to possession of the vehicle, the mortgagor.

**3.** Prior to an amendment effective in 2002, the deadline in § 28–2058(A)(1)(d) for applying for registration or title was thirty days rather than fifteen days. *See* 2000 Ariz. Sess. Laws, ch. 198, § 2. Because the record does not specify the day of the month of November 1999 that Reinke purchased the Corvette, we cannot determine whether Reinke's arrest on December 21, 1999 was more than thirty days after the purchase. We are assuming, for purposes of our analysis, that Reinke purchased the Corvette more than thirty days prior to his arrest.

sections 28–2058(A)(1)(a) and (b) provide that a transfer of "title" takes place when the seller "endorse[s]" the certificate of title and "deliver[s]" it to the purchaser along with "delivery" of the vehicle. Reinke submitted evidence that the seller, Parris, endorsed the certificate of title and delivered both the Corvette and the title document to him.

¶ 15 Although subsection 28–2058(A)(1)(d) imposes a statutory obligation on the purchaser to apply for registration or title within a specified period of time, there is no language in this statute stating that the transfer of title is ineffective if the purchaser fails to make a timely application. Alliance does not cite, nor have we found, any statute stating that if a purchaser fails to apply for registration or title, the purchaser has not acquired or no longer holds legal title.[4]

¶ 16 Alliance also claims support from § 28–2059 (Supp.2003) but this statute simply provides that a certificate of title will be issued by the MVD if "satisfactory proof of ownership is furnished." This language demonstrates that "ownership" exists independent of a certificate of title. Indeed, even a certificate of title is merely *prima facie* evidence of ownership. *See In re 1986 Chevrolet Corvette*, 183 Ariz. 637, 639, 905 P.2d 1372, 1374 (1994); *Wallace Imports, Inc. v. Howe*, 138 Ariz. 217, 224, 673 P.2d 961, 968 (App.1983). Therefore, § 28–2059 does not support the proposition that issuance by the MVD of a certificate of title is required for ownership.

¶ 17 Alliance places considerable emphasis on §§ 28–4835 (1998) and –4841 (Supp.2003). The first of these provides a presumption of responsibility regarding an abandoned vehicle: "The abandonment of a vehicle in a manner provided in this chapter is a presumption that the last registered *owner of record* is responsible for the abandonment and is subject to this chapter," unless certain exceptions are applicable. A.R.S. § 28–4835 (emphasis added). The second requires the MVD to notify "the owner and lienholder, if any, or any other person *identified on the*

*department's record* " that a vehicle has been reported as abandoned and title may be transferred if the owner, lienholder, or other person does not come forward and assert an interest in the vehicle. *See* A.R.S. § 28–4841 (emphasis added).

¶ 18 Based on the presumption of responsibility placed on owners of record under § 28–4835 and MVD's obligation to notify people identified in MVD records under § 28–4841, Alliance contends that only an owner of record is legally recognized as "owner" for purposes of towing, possessing, and obtaining title to abandoned vehicles. But these statutes simply do not say that.

¶ 19 As already noted, the "owner" of a vehicle includes the "person who holds the legal title." A.R.S. § 28–101(36)(a). Although "legal title" is not specifically defined, it is significant that the legislature did not use the phrase "owner of record" in the definition of "owner" instead of the phrase "person who holds the legal title." By using the precise terminology of "owner of record" in other statutes [5] but not in the definition of "owner" of a vehicle, we must assume that the legislature did not intend that the definition of "owner" be limited to or synonymous with "owner of record." *See Board of Regents v. Pub. Safety Ret. Fund Manager*, 160 Ariz. 150, 157, 771 P.2d 880, 887 (App.1989) ("Where the legislature has specifically used a term in certain places within a statute and excluded it in another place, courts will not read that term into the section from which it was excluded."); *see also Paragon Health Servs., Inc. v. Cent. Palm Beach Cmty. Mental Health Ctr., Inc.*, 859 So.2d 1233, 1235 (Fla.Dist.Ct.App.2003) ("Where the legislature has included a specific provision in one part of a statute and omitted it in another part, we must conclude that it knows how to say what it means, and its failure to do so is intentional.").

¶ 20 Based on the plain language of these statutes and the preceding analysis, a purchaser or transferee of a vehicle may hold

---

4. There are civil or administrative penalties for not timely applying for title or registration of a vehicle. *See, e.g.,* A.R.S. §§ 28–2162(E) (Supp. 2003), –2532 (1998). Whether Reinke may have been subject to such a penalty is not at issue in this dispute.

5. *See, e.g.,* A.R.S. §§ 28–4835, –4802 (1998).

"legal title" and be the "owner" of the vehicle even if he has not applied for a certificate of title from the MVD and is therefore not the "owner of record." This conclusion is further supported by the reasoning of our supreme court in *Price v. Universal C.I.T. Credit Corp.*, 102 Ariz. 227, 427 P.2d 919 (1967). In the context of a dispute between a financier holding certificates of title and subsequent purchasers without notice of the interest of the financier, the court rejected the financier's argument that ownership of a vehicle can be established only through a certificate of title issued in the owner's name. *Id.* at 232, 427 P.2d at 924.

¶ 21 In *Western Reserve Mutual Casualty Co. v. Mueller*, 18 Ohio App.2d 307, 47 O.O.2d 464, 249 N.E.2d 73, 74 (1969), a vehicle was sold and the title document was signed by the seller and delivered with the vehicle to the buyer. The buyer did not apply for a new certificate of title in his own name within three days as required under the applicable statute. *Id.* at 74–75. The buyer was then involved in an accident. For insurance coverage purposes, the issue was: "Who was the owner of the automobile at the time of the accident?" *Id.* at 74. An Ohio statute similar to A.R.S. 28–101(36)(a) stated that an "owner" means "a person who holds the *legal title* of a motor vehicle." *Id.* at 75 (emphasis added). The Court of Appeals of Ohio held that title had passed to the buyer without the formal issuance of a new certificate of title. *Id.* The court further explained:

> In the instant case, there was, as between [buyer and seller], a complete divestment of dominion, control, and ownership of the vehicle. It is clear that [seller] was no longer the owner, and he had no dispute with anyone claiming that he was not the owner. As between [buyer and seller], the sale was consummated.

*Id.* We agree with this reasoning. Reinke presented facts indicating that Parris and Reinke were involved in a valid sale of the car and that Reinke was entitled to dominion, control, and possession of the car prior to his arrest. *See Kovacs v. Sturgeon*, 274 Cal. App.2d 478, 79 Cal.Rptr. 426, 431 (1969) (finding buyer of vehicle was actual owner even though buyer did not record title with motor vehicle department).

¶ 22 Alliance cites *Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 11 P.3d 413 (App. 2000), *St. Paul Fire & Marine Insurance Co. v. Muniz*, 19 Ariz.App. 5, 504 P.2d 546 (1972), and *Faz v. Ford Motor Credit Co.*, 191 Ariz. 191, 953 P.2d 935 (App.1997), arguing that these cases demonstrate that legal title can only be held by a registered owner of a vehicle. These cases, however, provide no guidance regarding the definitions of "owner" or "legal title" under the circumstances of this dispute. *Childress Buick* involved an issue of ownership for purposes of ascertaining the proper payee under an insurance policy, and the majority stated that the statutory definition of owner in Title 28 was not applicable. 198 Ariz. at 458–59, ¶¶ 22–26, 11 P.3d at 417–18. *Muniz* addressed an issue of insurance coverage and the court concluded that the insurance policy definition controlled rather than the statutory definition of "owner." 19 Ariz.App at 6–7, 504 P.2d at 547–48. The court in *Faz* applied the statutory definition to determine that a lessee of a vehicle under a lease with an option to purchase is the owner rather than the lessor. 191 Ariz. at 194, 953 P.2d at 938.

¶ 23 For these reasons, the trial court erred in concluding that Reinke had not shown a triable issue of material fact regarding ownership. Reinke presented sufficient facts establishing, for purposes of opposing Alliance's motion for summary judgment, that he held legal title and was the owner of this Corvette.

■ ¶ 24 This record also reveals a question of fact regarding whether the Corvette was abandoned. In *Fields v. Steyaert*, 21 Ariz.App. 30, 31, 515 P.2d 57, 58 (1973), a towing company towed plaintiff's vehicle after it was involved in a traffic accident. One month later, plaintiff demanded the return of the vehicle from the towing company. *Id.* The towing company refused, and eventually sold the vehicle as an abandoned vehicle. *Id.* This court commented that the vehicle had not been abandoned:

> [The towing company's] position in this case is made further untenable by [its] treatment of the automobile as "aban-

doned" and [its] subsequent sale under the Arizona statute relative to abandoned vehicles. Obviously this was not an abandoned automobile; once [plaintiff] was informed of the location of his automobile he made a demand for possession.

*Id.* (citation omitted). Similarly, Reinke demanded possession of the Corvette. He executed a power of attorney—less than one month after the car was towed—granting Turner the authority to take possession of the car, and Turner attempted to do so. Reinke's attorney also sent Alliance a letter demanding release of the car.

¶ 25 Additionally, Alliance is not entitled to any presumption of abandonment under A.R.S. § 28–4801 (1998) because the Corvette had not been unattended for seventy-two hours when it was towed from the Circle K parking lot:

> "Abandoned vehicle" means a vehicle, trailer or semitrailer that is of a type subject to registration under this title whether lost, stolen, abandoned or otherwise unclaimed and that has been abandoned on a public highway, public property or elsewhere in this state, including private property. Evidence that a vehicle was left unattended for a period of forty-eight hours within the right-of-way of any highway, road, street or other public thoroughfare or *for a period of seventy-two hours on public or private property or elsewhere in this state is prima facie evidence of abandonment.*

(Emphasis added.) We conclude, therefore, that a genuine issue of fact exists regarding whether the car was abandoned by Reinke.

¶ 26 Further questions of fact exist regarding the accuracy of Alliance's Report of Abandoned Vehicle and other documents submitted to the MVD. If the facts asserted by Reinke in opposition to Alliance's motion for summary judgment are ultimately proven by Reinke, Alliance's certifications described above in ¶¶ 6 and 8 may be invalid. These unresolved fact questions support our reversal of the summary judgment.

## CONCLUSION

¶ 27 The summary judgment is reversed and this matter is remanded to the trial court for further proceedings consistent with this opinion.

CONCURRING: G. MURRAY SNOW, Presiding Judge and WILLIAM F. GARBARINO, Judge.