IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

PHOENIX MOTOR COMPANY, INC., *Plaintiff/Appellee/Cross-Appellant*,

*v.*

ZAKIA JACKLINE RAJABIAN, et al., *Defendants/Appellants/Cross-Appellees,*
*and*
MICHAEL SIMON, et al., *Defendants/Appellees*.

No. 1 CA-CV 24-0901

FILED 10-02-2025

---

Appeal from the Superior Court in Maricopa County
No.  CV2022-003384
The Honorable Katherine Cooper, Judge
The Honorable Scott Minder, Judge

**REVERSED IN PART; AFFIRMED IN PART; REMANDED**

---

COUNSEL

Schern Richardson Finter PLC, Mesa
By Michael Andrew Schern, Michael R. Somers, Aaron Matthew Finter
*Attorneys for Defendants/Appellants/Cross-Appellees*

Cohen Law Firm, Phoenix
By Larry J. Cohen
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Hendricks Murphy PLLC, Phoenix
By Brendan Murphy
*Co-Counsel for Plaintiff/Appellee/Cross-Appellant*

Schmidt Law Group PC, Scottsdale
By Eric W. Schmidt
*Co-Counsel for Defendant/Appellee M. Simon et al.*

Law Office of Jeffrey Issacson, Deerfield
By Jeffrey Issacson
*Co-Counsel for Defendant/Appellee M. Simon et al.*

Gallagher & Kennedy P.A., Phoenix
By John C. Norling, Karin Aldama
*Attorneys for Amicus Curiae*

Nick Kotoukian, Panorama City
*Defendant/Appellee*

_____

**OPINION**

Judge Andrew M. Jacobs delivered the opinion of the Court, in which Presiding Judge D. Steven Williams and Judge Michael S. Catlett joined.

_____

**J A C O B S**, Judge:

¶1        "Oh! what a tangled web we weave, when first we practice to deceive!"  Sir Walter Scott, *Marmion: A Tale of Flodden Field* (1808) (cleaned up).  Especially when it concerns secretive efforts by one auto dealership to wrest ownership of a coveted 2021 Mercedes-Benz G63 AMG in Arabian Grey ("the G-Wagon") from a rival dealership.

¶2        This appeal concerns conflicting claims of ownership of the G-Wagon, which everyone agrees was first owned by Mercedes-Benz of Chandler ("MB Chandler").  A group of would-be middlemen sold the G-Wagon to Phoenix Motor Company, better known as Mercedes-Benz of Scottsdale ("MB Scottsdale") – except they didn't own it, because they hadn't yet purchased it from MB Chandler.  Because a seller can't convey title to something they don't own, the superior court erred by finding MB Scottsdale owned the G-Wagon.  Accordingly, we reverse the court's summary judgment in favor of MB Scottsdale and against the titled owners of the G-Wagon, Zakia Jackline Rajabian and Dulceria La Bonita Wholesale, LLC (collectively, "Dulceria").  We remand to the superior court for further proceedings consistent with our decision that Dulceria owns the G-Wagon, as we explain in closer detail below.

**FACTS AND PROCEDURAL HISTORY**

### A. MB Scottsdale Agrees to Buy the G-Wagon Through the Would-Be Middleman Wholesale Exotics for $274,800.

¶3 A remarketer of cars, Frederick Aljundi of AMK Consulting, Inc. ("AMK"), approached Michael Cunningham, Director of Pre-Owned Acquisitions at MB Scottsdale, about MB Scottsdale's interest in buying the G-Wagon. Aljundi was connected to Cunningham through a mutual contact, Michael Simon, the Chief Executive Officer of Wholesale Exotics, Inc. ("Wholesale Exotics"), which had a history of selling vehicles to MB Scottsdale. Cunningham and Aljundi agreed MB Scottsdale would buy the G-Wagon for $274,800 through Wholesale Exotics, which would act as a middleman to acquire it.

¶4 Wholesale Exotics took steps toward the intended purchase of the G-Wagon. On October 27, 2021, MB Scottsdale paid $274,800 to Wholesale Exotics and received a Wholesale Bill of Sale and Remittance Advice for the G-Wagon. The next day, MB Scottsdale received a payment receipt from Wholesale Exotics. On October 29, 2021, Mellisa Aunrea Huerta Karam, an associate of Aljundi, sent a California bill of sale to Wholesale Exotics, listing Karam as the seller and Wholesale Exotics as the buyer. And on November 1, 2021, Wholesale Exotics paid AMK $274,800.

### B. Meanwhile, an Associate of AMK and Wholesale Exotics Buys the G-Wagon, But Fails to Provide It to MB Scottsdale.

¶5 On November 5, 2021, Nshan Kotoukian, an associate of Aljundi and AMK, bought the G-Wagon from MB Chandler for $251,926.03. MB Chandler had previously bought the G-Wagon from Mercedes-Benz USA ("MB USA") on October 26, 2021. MB Chandler did not know Kotoukian was part of a plan to transfer the G-Wagon to MB Scottsdale and would not have sold it to him had it known MB Scottsdale was involved.

¶6 Two months later, Cunningham messaged Kotoukian because Wholesale Exotics had not delivered the G-Wagon to MB Scottsdale. Kotoukian responded that AMK would be keeping the G-Wagon and refunding MB Scottsdale's payment, writing: "I only can tell you he's going to keep that car and he's going to refund your money and profits whatever you make it u can keep it he doesn't want it that's he told me last week!".

C.    **Kotoukian Trades the G-Wagon to MB North Scottsdale, Which Sells it to Dulceria.**

¶7    Kotoukian traded the G-Wagon in to a different dealership, MB North Scottsdale, on January 28, 2022.  Then, on February 8, 2022, MB North Scottsdale sold the G-Wagon to Dulceria.  Neither MB North Scottsdale nor Dulceria knew of the prior arrangement between MB Scottsdale, AMK and Wholesale Exotics.

D.    **MB Scottsdale Sues Dulceria and Obtains the G-Wagon Through a Temporary Restraining Order Before the Arizona Supreme Court Orders its Return to Dulceria.**

¶8    On March 18, 2022, MB Scottsdale sued Dulceria for conversion and sought a temporary restraining order ("TRO") entitling it to take possession of the G-Wagon.  The superior court granted the TRO without notice to Dulceria.  MB Scottsdale took the G-Wagon from Dulceria's storage locker.

¶9    Dulceria sought relief from the TRO in this court, which dismissed its appeal for lack of jurisdiction and denied it special action relief.  Dulceria then turned to the Arizona Supreme Court, which took jurisdiction of its special action and remanded the "matter to the superior court to dissolve the [TRO] and proceed in compliance with A.R.S. §§ 12-1301 to -1314."

E.    **Dulceria Moves to Dismiss MB Scottsdale's Complaint, and MB Scottsdale and Dulceria Move for Summary Judgment.**

¶10    On August 12, 2022, Dulceria filed a motion to dismiss under Arizona Rule of Civil Procedure ("Rule") 12(b)(6) and another for summary judgment.  Between these two motions, Dulceria argued MB Scottsdale didn't own the G-Wagon and had no valid claim for conversion.  MB Scottsdale opposed the motions and cross-moved for summary judgment on ownership and possession.

¶11    On September 22, 2022, the superior court denied Dulceria's motion to dismiss and sanctioned it, awarding fees and costs to MB Scottsdale under A.R.S. § 12-349(A).  The court noted Dulceria's motion was its third filing challenging MB Scottsdale's allegations and ruled that by filing a simultaneous motion for summary judgment, Dulceria "indicate[d] that the [m]otion to [d]ismiss was not filed in good faith and that they expected the [c]ourt to deny it based on the [c]ourt's prior rulings." Dulceria sought reconsideration, which the court denied.

### F. The Superior Court Denies Dulceria's Motion to Dismiss for Failure to Join Indispensable Party.

¶12 On October 2, 2022, Dulceria moved to dismiss MB Scottsdale's claim for failure to join a supposedly indispensable party MB North Scottsdale, the dealership that directly sold Dulceria the G-Wagon. The court denied the motion, finding ownership of the G-Wagon could be decided without MB North Scottsdale because there was "no claim or evidence that [MB North Scottsdale] has any right, title, or interest in the car[.]"

### G. The Superior Court Denies Dulceria's Motion for Summary Judgment and Grants MB Scottsdale Summary Judgment.

¶13 On January 30, 2023, the superior court granted summary judgment to MB Scottsdale that it owned the G-Wagon and denied Dulceria's motions for summary judgment on ownership and conversion.

¶14 The court ruled that MB Scottsdale became the G-Wagon's owner on October 28, 2021. The court reasoned that under Arizona law, a certificate of title creates only a rebuttable presumption of ownership that can be rebutted with "other indicia" that the car belongs to someone else. The court relied on the conduct of the middlemen: MB Scottsdale's payment to Wholesale Exotics; the Wholesale Bill of Sale given to MB Scottsdale from Wholesale Exotics; Kotoukian's text message stating that the car belonged to MB Scottsdale; and Cunningham's understanding that Aljundi and his associates would purchase the car for MB Scottsdale through Wholesale Exotics. The court emphasized that the contemplated purchase was a wholesale transaction in which "the funds and documents necessary to buy/sell a vehicle are typically exchanged before the purchaser receives physical possession of the car and a certificate of title."

¶15 The court concluded that MB Scottsdale had title superior to Dulceria's because Kotoukian's failure to deliver the G-Wagon to MB Scottsdale was a theft, and that under Arizona law, theft prevents a subsequent purchaser from acquiring title superior to the rightful owner. Dulceria moved for reconsideration, which the court denied.

### H. The Superior Court Grants MB Scottsdale's Motion for Summary Judgment on Conversion Damages.

¶16 On April 26, 2024, MB Scottsdale moved for summary judgment on conversion damages. The court granted the motion on August 21, 2024 and awarded $288,070 to MB Scottsdale. The court found that

Arizona law awards conversion damages from the time of the conversion and that the fair market value of the G-Wagon was demonstrated by Dulceria's purchase price. The court denied MB Scottsdale's request for prejudgment interest.

### I. The Superior Court Denies Mercedes-Benz Financial Services Motion for Summary Judgment.

¶17 On January 3, 2024, Mercedes-Benz Financial Services ("MB Financial Services"), Dulceria's lender in its purchase of the G-Wagon, moved for summary judgment on its declaratory judgment claim against MB Scottsdale, arguing: (1) MB Scottsdale entrusted possession and title of the G-Wagon to Kotoukian, a known luxury car merchant, thus empowering him to transfer title to MB North Scottsdale; and (2) Kotoukian should be estopped from denying he transferred title to MB North Scottsdale. Dulceria joined the motion. On May 1, 2024, the court denied the motion. The court rejected the entrustment theory because MB Scottsdale "did not deliver the G-Wagon to Aljundi/Kotoukian, nor acquiesce to them retaining the car." The court rejected the estoppel theory because there was "no evidence that [MB Scottsdale] held out Aljundi/Kotoukian or allowed them to represent themselves as owners authorized to sell the car."

### J. The Superior Court Enters Rule 54(b) Judgment the Parties Timely Appeal.

¶18 The superior court entered a Rule 54(b) judgment on November 15, 2024. Dulceria timely appealed, challenging the imposition of sanctions on it and the denials of its motions: (1) to dismiss MB Scottsdale's claims under Rule 12(b)(6); (2) to dismiss for failure to join an indispensable party; (3) for reconsideration regarding the motion to dismiss and sanctions; (4) for summary judgment on ownership and conversion; and (5) for reconsideration of the denial of its motion for summary judgment on ownership and conversion. Dulceria also appealed: (6) the denial of MB Financial Services' motion for summary judgment; (7) the grant of summary judgment to MB Scottsdale on conversion; and (8) the Rule 54(b) judgment. MB Scottsdale timely cross-appealed the denial of prejudgment interest on its conversion damages.

¶19 We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. § 12-2101(A)(1).

**DISCUSSION**

I.    **The Superior Court Erred by Entering Summary Judgment That MB Scottsdale Owned the G-Wagon, and That Dulceria Converted It.**

**¶20**    We review the grant or denial of summary judgment de novo. *See Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 139 (App. 2000). Dulceria argues that we must reverse the summary judgment against it because it owned the G-Wagon and therefore could not have converted it. Dulceria contends MB Scottsdale could not have acquired title to the G-Wagon from Wholesale Exotics because Wholesale Exotics did not acquire title from MB Chandler. MB Scottsdale counters that it acquired title on October 28, 2021, based on the activities of the would-be middlemen in MB Scottsdale's planned acquisition of the G-Wagon. Specifically, it argues its attempted purchase was a wholesale transaction, in which "the funds and documents necessary to buy/sell a vehicle are typically exchanged before the purchaser receives physical possession of the car and a certificate of title," and that Kotoukian stole the G-Wagon when he, having purchased it with MB Scottsdale's funds, failed to deliver it to MB Scottsdale. It argues this theft severs Dulceria's chain of title. As we next explain, Dulceria is correct.

A.    **The Superior Court Erred by Entering Summary Judgment That MB Scottsdale Owned the G-Wagon, Because MB Scottsdale Could Not Have Acquired Title From Wholesale Exotics, Which Never Had Title to Sell.**

**¶21**    A buyer can only acquire that title which the seller possesses. A.R.S. § 47-2403(A) ("A purchaser of goods acquires all title which his transferor had or had power to transfer."); *see Simpson v. Shaw*, 71 Ariz. 293, 297 (1951) ("[A]n individual can convey no better title to an item of property than that which he himself possesses."). Put another way, a seller cannot transfer title they do not hold, subject to limited exceptions not relevant here.

**¶22**    That bedrock principle determines who owns the G-Wagon. The superior court found MB Scottsdale acquired title to the G-Wagon on October 28, 2021 after MB Scottsdale sent $247,800 to Wholesale Exotics and received a Bill of Sale. But MB Scottsdale could not have acquired title to the G-Wagon from Wholesale Exotics on that date because Wholesale Exotics did not have legal title to the G-Wagon to transfer. Calling the transaction between Wholesale Exotics and MB Scottsdale a "wholesale" transaction does not displace these fundamentals.

**¶23**         Dulceria's registered title to the G-Wagon is prima facie evidence of ownership. *See Reinke v. All. Towing*, 207 Ariz. 542, 545 ¶ 16 (App. 2004); A.R.S. § 28-101(61) (listing three definitions of "owner" of a vehicle, the first of which is "[a] person who holds the legal title of a vehicle."). Our cases speak of rebutting the presumption of ownership registered title creates, *id.*, and of considering "[o]ther indicia . . . to determine legal or equitable ownership." *Matter of 1986 Chevrolet Corvette, License: None, VIN: 1G1Y678XG5905647, Seized in M.A.N.T.I.S. Case 9105079501*, 183 Ariz. 637, 639 (1994). But these cases rebut the presumption that registered title is ownership to vindicate the ownership interests of purchasers which demonstrably descend from the true owner. Thus, in *Matter of 1986 Chevrolet Corvette*, our supreme court upheld a litigant's claim to own a car the state had seized, because he "possessed and was able to produce all appropriate paperwork, including sales documents furnished by the dealer." *Id.* And in *Reinke*, this Court similarly upheld (against a towing company's claim of abandonment) a litigant's claim to own a car he had provably purchased, but merely failed to register with the Department of Motor Vehicles. 207 Ariz. at 546 ¶ 23.

**¶24**         Nothing here rebuts the presumption that Dulceria, the registered title holder, owns the G-Wagon. The manufacturer, MB USA, first sold the G-Wagon to MB Chandler on October 26, 2021, when MB Chandler received the G-Wagon and its Certificate of Origin. There is no evidence of a transfer from MB Chandler to any buyer until November 5, 2021, when MB Chandler sold the G-Wagon to Kotoukian and delivered the G-Wagon to him along with a G-Wagon Buyer's Order with a purchase price of $251,926.03. This is further supported by Kotoukian's Arizona Certificate of Title, obtained on December 3, 2021. On that date, Kotoukian owned the G-Wagon.

**¶25**         MB Scottsdale produced no evidence MB Chandler transferred legal title to Wholesale Exotics on or before October 28, 2021. Thus, Wholesale Exotics could not have transferred title to MB Scottsdale on that date, as the superior court's summary judgment order incorrectly concluded it did, because Wholesale Exotics had no ownership interest to transfer. *See Simpson*, 71 Ariz. at 297. Apart from arguing A.R.S. § 28-2051 doesn't apply to wholesale transactions, and therefore delivery wasn't required to transfer title, MB Scottsdale has cited no law suggesting transactions labeled "wholesale" can transfer title not yet owned. The only document that purports to transfer title to Wholesale Exotics is a California bill of sale dated October 29, 2021 listing an associate of AMK as the seller. But that would have been news to MB Chandler, which was not then a party to any of the machinations of the would-be middlemen in this case. Until

November 5, 2021 when MB Chandler sold the G-Wagon to Kotoukian, only MB Chandler could transfer ownership of the G-Wagon. Neither this record nor Arizona law support MB Scottsdale's theory that it was the owner of the G-Wagon on October 28, 2021. Nor could counsel for MB Scottsdale explain at argument how it owned the G-Wagon on October 28, 2021, when MB Chandler hadn't yet sold it to anyone, and still had a right to sell the G-Wagon to any member of the public. We therefore reverse the entry of summary judgment on ownership of the G-Wagon, and direct the entry of summary judgment for Dulceria on its claim to own the G-Wagon, and against MB Scottsdale on its conversion claim.

**B.      MB Scottsdale's Claim That Theft Interrupted Dulceria's Chain of Title, Thus Establishing MB Scottsdale's Ownership of the G-Wagon, Fails as a Matter of Law.**

**¶26**        MB Scottsdale contends Dulceria could not have obtained title from MB North Scottsdale, because MB North Scottsdale obtained title from Kotoukian, who MB Scottsdale contends stole the G-Wagon. MB Scottsdale has the set of transactions right: after acquiring the G-Wagon from MB Chandler, the evidence shows Kotoukian next sold the G-Wagon to MB North Scottsdale on January 28, 2022, when Kotoukian delivered the G-Wagon to the dealership and received a Bill of Sale with a purchase price of $235,000. Finally, a Bill of Sale with a purchase price of $286,000 shows the G-Wagon was sold and delivered from MB North Scottsdale to Dulceria.

**¶27**        Despite that, MB Scottsdale's argument as to the legal effect of this chain of transfers is wrong as a matter of law. The superior court found Dulceria's claim of ownership was inferior to MB Scottsdale's because the chain of title was supposedly severed when Kotoukian did not deliver the G-Wagon to Wholesale Exotics or MB Scottsdale and thus "stole" it. But neither MB Scottsdale nor Wholesale Exotics ever acquired title from a seller that had title to give. *See* Paragraphs 21-25, *supra*. As such, the G-Wagon was never stolen from them because it did not belong to them. *See* A.R.S. § 13-1802(A)(2) ("A person commits theft if, without lawful authority, the person knowingly: Controls property of another with the intent to deprive the other person of such property."). Because there was no theft severing Dulceria's chain of title, Dulceria rightfully owns the G-Wagon.

### C. The Superior Court Erred by Entering Summary Judgment Against Dulceria on Conversion Because Dulceria, Not MB Scottsdale, Owned the G-Wagon.

**¶28** The superior court granted summary judgment against Dulceria after finding MB Scottsdale was the rightful owner of the G-Wagon and thus had a right to immediate possession. *See Sears Consumer Fin. Corp. v. Thunderbird Products*, 166 Ariz. 333, 335 (App. 1990) (explaining that to succeed on a conversion claim, the plaintiff must have "had the right to immediate possession of the chattel at the time of the alleged conversion."). But as we have explained, MB Scottsdale never acquired title to the G-Wagon and was not its rightful owner. *See* Paragraphs 21-25, *supra*. It thus lacked a right to immediate possession of it. Accordingly, MB Scottsdale's conversion claim fails as a matter of law. We reverse the entry of summary judgment on conversion of the G-Wagon.

## II. The Superior Court Did Not Err By Ruling That MB North Scottsdale Is Not an Indispensable Party.

**¶29** "We review the denial of a motion to dismiss for an abuse of discretion." *Keenen v. Biles*, 199 Ariz. 266, 267 ¶ 4 (App. 2001). A court abuses its discretion when it exercises discretion that is "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *Tilley v. Delci*, 220 Ariz. 233, 238 ¶ 16 (App. 2009).

**¶30** Dulceria moved to dismiss the claims against it for failure to join MB North Scottsdale as an indispensable party, reasoning that MB North Scottsdale was needed in the suit to adjudicate claims as to chains of title. The superior court denied that motion to dismiss because there was "no claim or evidence that [MB North Scottsdale] has any right, title, or interest in the [G-Wagon]."

**¶31** We agree with the superior court. A party is indispensable if "no final judgment or decree could be entered, doing justice between the parties actually before the court and without injuriously affecting the rights of others not brought into the action." *Town of Gila Bend v. Walled Lake Door Co.*, 107 Ariz. 545, 549 (1971). And as the superior court properly observed, no party claims MB North Scottsdale has an interest in the G-Wagon. That put the court in a position to do justice among the parties as to their respective claims, without injuring MB North Scottsdale. *See id.* We affirm the superior court's denial of Dulceria's motion to dismiss for failure to join MB North Scottsdale as an indispensable party.

### III.    The Superior Court Erred By Sanctioning Dulceria.

**¶32**        We review an order granting sanctions for abuse of discretion and reverse when the order is manifestly unreasonable or imposed for untenable reasons. *See Hmielewski v. Maricopa Cnty.*, 192 Ariz. 1, 4 ¶ 13 (App. 1997); *Tilley*, 220 Ariz. at 238 at ¶ 16.  The latter ground requires reversal here.

**¶33**        The superior court granted MB Scottsdale its fees and costs incurred in responding to Dulceria's August 12, 2022 motion to dismiss. The court found Dulceria's motion: (1) lacked substantial justification; and (2) unreasonably expanded the proceeding, diverted court resources, and increased the cost of litigation. *See* A.R.S. § 12-349(A).  MB Scottsdale argues the superior court properly imposed sanctions because the motion to dismiss "was a near carbon copy of a motion to dismiss brought by . . . Kotoukian on the issue of conversion that had been denied just days before."  MB Scottsdale also argues Dulceria's failure to meet and confer before filing the motion justifies sanctions.

**¶34**        Dulceria is right that its motion was not groundless and that it was legal error to sanction it for making correct arguments that ultimately prevailed.  A claim is groundless under A.R.S. § 12-349 if it cannot be supported by rational argument based on evidence or law. *See Arizona Republican Party v. Richer*, 257 Ariz. 237, 243 ¶ 15 (2024).  As explained above, Dulceria's chain of title arguments are meritorious.  Their sound legal basis should have prevented the entry of sanctions.

**¶35**        MB Scottsdale is right that Dulceria was required to meet and confer before filing the motion to dismiss at issue.  But the superior court's sanction rests principally on Dulceria's repeated assertion of legal arguments we have found meritorious.  Accordingly, the court abused its discretion in sanctioning Dulceria.  We reverse its September 22, 2022 grant of fees and costs to MB Scottsdale.

**¶36**        Because we hold the superior court erred by finding MB Scottsdale owned the G-Wagon and Dulceria converted it, we need not address the other issues raised on appeal.  In particular, Dulceria's appeals from denials of (1) its motions for reconsideration, (2) its Rule 12(b)(6) motion to dismiss, and (3) MB Financial Services' motion for summary judgment are moot, as is MB Scottsdale's appeal of the denial of prejudgment interest on its conversion damages.

## CONCLUSION

¶37        For the foregoing reasons, we reverse in part and affirm in part.  We reverse the judgment for MB Scottsdale and against Dulceria on ownership and conversion, for conversion damages, and for sanctions.  We direct the superior court to enter judgment for Dulceria on its claim to own the G-Wagon and for Dulceria on MB Scottsdale's conversion claim.  We affirm the denial of Dulceria's motion to dismiss for failure to join an indispensable party.

¶38        We remand to the superior court for further proceedings consistent with this decision, in which Dulceria may seek its attorneys' fees and costs, including for this appeal, pursuant to applicable law.

